By the Court,

Nelson, Ch. J.
The first section of the act of 1830 provides that every mechanic, workman, or other person doing any work towards the erection of any building in the city of New-York, erected under a contract in writing between the owner and builder, or other person, whether such work be peifformed as jorneyman, laborer, cartman, sub-contractor or otherwise, and whose demand has not been paid, may deliver to the owner an attested account of the amount and value of the work thus performed remaining unpaid, and thereupon such owner shall retain, out of his subsequent payment to the contractor, the amount of such work, for the benefit of the person performing the same. By § 2, whenever any account of labor performed on the building shall be placed in the hands of the owner, or his agent, it shall be his duty to furnish his contractor with a copy, in order, if there be any disagreement between such contractor and his creditors, they may, by amicable adjustment or arbitration, ascertain the sum due; and if the contractor shall not, in ten days after receiving such claim, give notice to the owner that he intends to dispute it, or if he neglects in ten days to have the matter adjusted, he shall be considered assenting to it. The 3d § provides for an adjustment between the contractor and the worhman. The 4th § provides that if the contractor does not pay the sum ascertained to be due his creditors, in ten days, with the cost accrued, the owner shall pay the same out of the fund in his hands, and which may be recovered from the owner by the creditor of the contractor, in an action for money had and [552] received to the use of said creditor, to the extent of any balance due from the owner. A subsequent statute places the material-man on a footing with the workman, and dispenses with the necessity of having the contract in writing. Statutes, session 1832, p. 181.
The question presented upon the error book is, whether, under the act of 1830, any worhman, or material-man, beyond those employed directly by the contiaclor, has a lien upon the fund in the hands of the owner, and can call *311 upon the owner for payment, in case of default by their employer. The plaintiff here was employed by Tingley, a sub-contractor, who had agreed to do the masoi), work; he failed and absconded, leaving the plaintiff, who was a workman employed by him unpaid. The court below decided that he came within the provisions of the act, and in effect, that any workman upon the building, or material-man, however remote his contract might be from the owner, was entitled to the remedy there prescribed. If this be so, it is most apparent that the operation of the act may be extreme!y oppressive upon the contractor, and for aught I see, his only protection must be in refusing to subcontract the job; because if the remote workman under the sub-contractor, in whose contract the original contractor has no interest, and over which he can exercise no control, and which therefore maybe injudicious and extravagant for aught that he can do, can by presenting his attested account to the owner, collect it, so far as any balance due the contractor exists in his hands, the whole fund maybe exhausted in spite of the contractor, though the job may have been but partially finished. According to the decision below, the subcontract was wholly disregarded, as affording no test of the rights and obligations of th.e contractor. He had fulfilled it to the letter himself, according to the proof offered and rejected; had paid the whole sub-contract price, previous to the presentation of the plaintiff’s account, and was therefore entitled, upon common law principles, to have the work complete. Still a workman under Tingley, the sub-contractor, was permitted to seize funds in the owner’s hands to the amount of $89, and if there are others, the remaining two or three hundred dollars may be appropriated in the same way. Thus, while the contractor may have made a prudent contract with [553] the sub-contractor, within the amount to be received from the owner for the erection of the building, the statute, if the construction contended for is sound, requires the court to disregard it, and enforce payment to persons employed by the sub-contractor, according to the contract price between them, as long as the contractor has the funds in the hands of the owner. To illustrate this position: A. agrees to build B. a house for $5000, and subcontracts it to C. for $4000. C., by improvident contracts, finds, when the work is half done, that he owes his workmen and material-men the $4000: and abscondes. They present their attested accounts to the owner, who is bound “to retain out of his subsequent payments to the contractor the amount of such work, &c., for the benefit of the persons performing the same.” The first section is mainly relied on to sustain this view of the statute, and undoubtedly it gives color to it in some degree. By it every mechanic, &c., doing any work, &c., towards the erection of the building, erected under a contract between the owner and builder, “ whether such work shall be performed as journeyman, laborer, cartman, sub-contractor or otherwise,” may present his attested account to the owner, &c. Here, in terms, the statute includes every laborer upon the building, without -any limitation in respect to the person who may have employed him, or the character of his contract. If he has labored towards the erection of the building, or furnished materials, enough is shown to entitle him to a lien upon the fund in the hands of the owner, and payment can be enforced. .But we must look at all the provisions of the statute, and construe this section, if possible, according to the intent of the legislature as gathered from the whole, reconciling apparent discrepancies, and making all consistent and practicable, as far as posssible.
The subsequent sections of the act clearly show,, that this new and extraordinary remedy was intended to be limited to the persons employed by him who contracted with the owner. The 2d § provides that the owner shall furnish his contractors with a copy óf the amount, so that if there shall be any disagreement between him and his creditors, they may adjust the *312 amount. By the next section, if the adjustment can not he amicably made, they shall submit the difference to arbitrators; and the 4th § declares, that if the contractor shall not pay, the sum found due to his creditor with costs, the owner shall pay the same out of the funds in his hands; and in case of default, it may be recovered in an action for money had and received, to the use of the creditor, &c. Nothing can be more explicit than these provisions, and they limit the right to or lien upon the funds of the contractor in the hands of the owner to Ms creditors—persons who have performed the work, &c., under a contract with him. This view makes the whole system consistent, reasonable and practicable, and subjects no one to a responsibility beyond what he has assumed by virtue of his contract, except that the owner may be required to pay an account of a workman employed by the contractor, or of a person from whom the contractor has procured the materials, after it had been adjusted between them, or an opportunity to adjust the same has been afforded, directly to the creditor of the contractor, instead of paying the money due to the contractor himself. I am therefore of opinion the court below erred, and the judgment must be reversed.
Judgment reversed.