# LEONARD ROTHGERBER

*v.*

# AARON N. DUPUY.

1. STATUTE—*when strict construction prevails.* Statutes which are opposed to common rights, and confer special privileges upon one class of community not enjoyed by others, should receive a strict construction; and the courts will require that cases coming before them shall be brought clearly within the provisions of such statutes before relief will be granted under them. Such laws are not extended by liberal construction to embrace cases not within the language of the statute.

.2. So, where a statute creates a lien secret in its character, the holder of it being required to do nothing to apprise purchasers or creditors of its existence, it will not be presumed that the legislature intended to embrace within the operation of such law, any but such parties as are expressly named.

3. MECHANIC'S LIEN—*does not apply as to second sub-contractor.* The act of 1869, which gives a sub-contractor performing labor or furnishing materials for the erection of a building, a lien thereon for the value of such labor, will not be extended by construction so as to give its benefits to a sub-contractor of a sub-contractor.

4. So, where a contractor for the building of a house employed another to do the work for him, and such second contractor employed the plaintiff, who performed labor, etc., and then brought suit against both contractors for the balance due him, claiming that the first contractor was to be treated as the owner: *Held,* that the first contractor was not liable with the party who employed the plaintiff.

5. In such a case, the conduct of the owner of the building in permitting the work to be done without objection, would not affect the rights of the parties to the suit, she not being a party to the suit.

6. SAME—*estoppel.* And even if the first contractor, in such a case, had represented himself as the owner of the property after the plaintiff had contracted with the second contractor; *Held*, that this would not estop him from denying ownership, as such representation could not have misled the plaintiff and induced him to perform labor on the faith of it.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. R. H. FORRESTER, for the appellant.

Messrs. RUNYAN, AVERY, LOOMIS & COMSTOCK, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by appellee, before a justice of the peace of Cook county, against appellant and John Milne, to recover for work and labor performed in the construction of a house.

Appellant, in the justice's court, in abatement of the action, denied all joint liability with Milne, but on the trial in that court plaintiff recovered a judgment for $67.35 and costs. From this judgment an appeal was prosecuted to the circuit court of Cook county. The cause was tried in that court, when the jury found a verdict for the same amount.

A motion for a new trial was entered, but was overruled by the court, and defendant, Rothgerber, brings the case to this court on appeal.

It appears that Ann Hyman, being the owner of a lot in the city of Chicago, employed appellant to build a house thereon. A contract was drawn and entered into by the parties, and it was placed in the hands of Selby, the architect having the superintendence of the construction of the building.

Appellant employed Milne, as a sub-contractor, to erect the building, and Milne employed appellee, as his sub-contractor, to do the work. Appellee insists that, as appellant claimed to be the owner, he has the right, under the Mechanic's Lien Law, to recover the unpaid balance due him for work on the building, from appellant and Milne.

The Mechanic's Lien Law of 1869, sec. 1, provides that every sub-contractor, mechanic, workman, or other person, who shall, in conformity with the terms of the contract between the owner of the land and the original contractor, perform any labor or furnish any materials in building the house, etc., shall have a lien for the value of such labor, etc., upon such house.

The second section provides for a notice to the owner by the person furnishing labor, etc. The fifth section confers the power to bring suit for the amount due, by the sub-contractor, against the owner and the contractor jointly.

The question presented and urged is, whether the provisions of this statute can be extended to the sub-contractor of a sub-contractor. He is not embraced in the terms of the statute, but it is urged that he falls within the spirit of the enactment. This class of statutes is opposed to common right. They confer special privileges and rights upon one class of community not enjoyed by others; and courts, in construing such statutes, confine them to the provisions of the law, and require that the case shall be brought clearly within their provisions before relief will be granted. Such laws are not extended by liberal construction to embrace cases not in the language of the statute.

Again, this lien created by the statute is secret in its character, the holder of it being required to do nothing to apprise purchasers or creditors of its existence. For these reasons, we can not believe the legislature intended to embrace within the operation of the law any but those whom they have expressly named. We can, therefore, only apply the statute to sub-contractors, and can not extend it indefinitely to successive subcontractors.

Appellee, not being a sub-contractor, but a contractor under a sub-contractor, can not be protected by this statute, as he does not fall within its provisions. As appellant was not the owner, he could not be sued jointly with his sub-contractor.

This statute seems to be substantially the same as an act adopted by the general assembly of New York, applicable to the city of New York; and the Supreme Court, before its reorganization, held, in construing the act, that the workman under a sub-contractor had no lien, and could not compel payment from the owner. The provision of that act is, that every mechanic, workman, or other person doing any work in the erection of any building in the city of New York, built under a contract in writing between the owner and the builder, or other person, whether such work be performed as journeyman, laborer, cartman, sub-contractor, or otherwise, and whose demand has not been paid, may deliver an attested account of the amount and value of the labor thus performed and not paid, to the owner, who was required to retain the amount out of the subsequent payments to the contractor for the benefit of such workman.

It will be observed that statute is quite as comprehensive as ours, but the court held that the lien was not extended to a workman employed by a sub-contracter. *Wood* v. *Donaldson*, 17 Wend. 550. The case was taken to the Court of Appeals (see 22 Wend. 395), where the judgment of the Supreme Court was affirmed.

The Supreme Court of Pennsylvania, in the case of *Harlan* v. *Rand*, 27 Penn. (3 Casey) R. 511, under a statute somewhat similar in its material provisions, held as did the New York courts. Lowrie, J., in delivering the opinion of the court, says: "We are to meet the question, how distant may the claimant stand from the contract between the owner and the builder, before we can say that he has no lien? Certainly there must be a limit somewhere. The carpenter may undertake with the builder for furnishing all his kind of work,

including nails, screws, locks, hinges, fastenings, etc. Can he transmit the right of lien to all the dealers and artisans in these kinds of business? If he can, then the lien rights against any house may be entirely indefinite. The bricklayer, the stonemason, the plasterer, the painter, the paper-hanger, the plumber and the cellar digger, may multiply them in the same way, until the costs and liens may exceed the value of the house."

He further says, that the law distributes all of the parties to the work into three classes: first, the owner; second, the contractor, and third, the workmen and material-men; that the law established one link only between the owner, on the one hand, and the workmen and material-men, on the other, and required the lien to be founded on contract, express or implied, and authority to the sub-contractor to bind the property by a lien would not be implied.

Again, the fourth section of the act of 1869 gives the right to the owner, as often as he may require, to compel the original contractor to give him a statement of the number of persons in his employment and sub-contractors, giving their names, their rate of wages and terms of contract, and how much, if anything, is due them; which statement is required to be made under oath.

In giving a construction to this act, it is a significant fact that the owner is given no power to compel a sub-contractor to give him such an account.

If the general assembly had intended to give the sub-contractor of a sub-contractor power, by contract for labor or materials, to charge the premises with the lien as it does the original contractor, it is obvious it would have afforded the owner the same means of protecting himself against such sub-contractor that is given against the first contractor.

To give the construction contended for would lead to all the inconveniences pointed out by the New York and Pennsylvania courts in the cases to which we have referred. Until there shall be further legislation, it would operate injuriously,

if not disastrously, to both the owner and the first contractor. Hence, we infer that it was not designed to give the employee of a sub-contractor a lien under the statute.

The first instruction for appellee should not have been given. It referred to the conduct of the owner in permitting the work to be done without objection. She was not a party to the suit, and it is not perceived how her conduct could affect the rights of these parties. The owner employed a contractor to perform the work under the direction of an architect, and the work was done under their directions. We are unable to see that the law imposes upon her any duty for the protection of sub-contractors or others.

This case is unlike the *Emporium Company* v. *Holmes*, 23 Ill. 85. In that case the suit was against the company, as the owners of the property improved, and a purchaser in possession, to enforce a mechanic's lien; but in this case the suit was against the contractor and his sub-contractor. We fail to perceive any analogy between the two cases. Had appellee been disposed to learn who was the owner, he only had to inquire of the architect who inspected the work he was performing. This would have been no hardship upon him.

Again, appellee's second instruction should not have been given. Even if appellee's evidence had shown that appellant represented himself as the owner of the property, still we fail to find any evidence in the record that he so represented himself till after appellee had contracted with and gone to work under Milne. If no representations of that character were made before he contracted, he could not have been misled, and did not perform labor on the faith of such representation, and if not, how can he claim that he is wronged, or that appellant is estopped to deny that he is the owner of the property? There was no evidence upon which to base this instruction, and as it was calculated to mislead the jury, it was error to give it.

Had appellant been sued alone as a guarantor for Milne's payment of appellee, then the evidence adduced would have

been pertinent to the issue; but appellant's declarations, if he made any, as to his ownership, after appellee had made his contract with Milne, can not operate to create an original liability on appellant's part. They could not relate back to and become a part of Milne's agreement.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SHELDON took no part in the decision of this case.