# LEITCH

*v.*

# THE CENTRAL DISPENSARY AND EMERGENCY HOSPITAL.

### MECHANICS' LIENS ; MATERIAL MEN.

The material men intended to be protected by the mechanics' lien law of 1884 (23 Stat. 64), are those only who occupy the position of contractor or sub-contractors, and who furnish materials under contract with the owner or principal contractor.

No. 416.    Submitted April 4, 1895.    Decided May 7, 1895.

HEARING on an appeal by the complainant from a decree sustaining a demurrer to and dismissing a bill to enforce a mechanics' lien.    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. John Ridout* for the appellant :

1. The vital question raised by the demurrer in this case is whether a material man who has contracted with a sub-contractor is entitled to a mechanics' lien under the act of July 2, 1884.  (23 Stat. 64.)   The answer to this question depends entirely upon the construction of the first section of said act.   It would seem that there could be very little doubt of the meaning and intent of the statute quoted.   In express terms it confers the right of lien upon the *material man*, which designation is manifestly used to indicate a different class from contractor, sub-contractor or the other persons mentioned in the section.   This view is confirmed by reference to the language of sec. 692 of the Revised Statutes relating to the District of Columbia, in which the law on the subject of mechanics' liens was embodied prior to the enactment of the act of 1884.   Upon comparison of

these statutes it will be seen that sec. 692 required a contract with the owner or his agent to entitle the material man to a lien, and that the act of 1884 dispensed with the necessity for such a contract as a foundation for a mechanics' lien, and entitled the material man to a lien for materials *furnished* for or about the erection of the building, the essential requisite under the act of 1884 dispensed with the necessity for such a contract as a foundation for a mechanics' lien, and entitled the material man to a lien for materials *furnished* for or about the erection of the building, the essential requisite under the act of 1884 being that the materials shall have been *furnished* for a particular building. The act of 1884 was amendatory of the existing law, and was manifestly intended to enlarge the remedy in favor of persons by whose labor or material a building had been erected. If a material man must also be either a contractor or sub-contractor, the act of 1884 must be construed as if the provision in favor of material men was entirely omitted from the statute. It is elementary that in the construction of statutes, effect must, if possible, be given to every word of the statute, and this rule absolutely forbids such an interpretation as will be contended for.

There are as strong reasons for the protection of material men as any other class of persons who contribute to the erection of buildings, and this right has been recognized in most of the States of the Union. Phillips on Mechanics' Liens, sec. 46.

The Indiana statute, which is not as explicit as that of this District, has been held to entitle a material man who was a contractor with a sub-contractor to a mechanic's lien. *Barker* v. *Buell*, 35 Ind. 297. A similar decision has been made under a Nebraska statute, the language of which is much less emphatic than that of the Act of 1884. *Stewart Co.* v. *Railroad Co.*, 28 Neb. 79.

2. The learned justice below felt himself bound by the decision in the case of *Monroe* v. *Hannan*, 18 D. C. 197, and so sustained the demurrer and dismissed the bill. It

is true in *Monroe* v. *Hannan* the court held that a material man who had contracted with a sub-contractor was not entitled to a lien, but it is respectfully submitted that this court is not bound by that decision, and that it is erroneous.

*Messrs. Webb & Webb* for the appellees :

1. The complainants herein have no contract with the defendant nor with its agent, the contractor. Their contract was with a sub-contractor. They stand, therefore, in the position of a second sub-contractor or a sub-sub-contractor, and claim a lien as such.

This very question was decided adversely to complainant's contention by the Supreme Court of the District of Columbia. *Monroe* v. *Hannan*, 18 D. C. 197.

But it is contended that the complainants are entitled to recover in their capacity of material men, and that the. statute was intended to include every material man, however remote a degree he may be from the owner, who supplied materials used in the erection of the building. This is evidently not the proper construction of the statute, and it was so decided in the case of *Monroe* v. *Hannan, supra.* " *The material man* who furnished materials contracted for or furnished for or about the erection of a building," can mean but one person, *i. e.*, the person who furnished materials directiy to the owner of the building or to his authorized agent, the contractor ; and not one who furnishes materials to a sub-contractor, which must go through two or three hands before they are finally used in the building contracted for. *Spalding* v. *Dodge*, 6 Mack. 295 ; *Rothberger* v. *Dupuy*, 64 Ill. 452 ; *Ahern* v. *Evans*, 66 Ill. 125 ; *Newhall* v. *Kastens*, 70 Ill. 156; *Schaar* v. *Ice Co.*, 149 Ill. 441 ; *Rolling Mill Co.* v. *Hamilton*, 61 Fed. Rep. 476 ; *Stephens* v. *Railroad*, 29 Ohio St. 227 ; *Harlan* v. *Rand*, 27 Pa. St.; *Duff* v. *Hoffman*, 63 Pa. St. 193 ; *Stone Co.* v. *Board, &c.*, 18 S. W. 406 ; *Morrison* v. *Whaley*, 19 At. 330 ; *Multine*

v. *Washington Lodge*, 6 Houst. 354; *Wood* v. *Donaldson*, 17 Wend. 550.

2. Upon examining section 12 of the act of 1884, which refers more specifically to the rights of material men under said statute, it becomes still more apparent that the contention of the complainants cannot be maintained. In this section the term material man is especially limited to those who furnish materials directly to the owner or his agent; and it nowhere appears in the said statute that it was intended to enlarge this limitation and extend the privileges of the statute to those furnishing material to others than the owner or his agent. If the construction of this act was extended, so as to include all who furnished material used in a building, as claimed by the appellants, the result would be most injurious; and so far reaching in its effect as to make building a most hazardous and expensive luxury. *Monroe* v. *Hannan, supra;* Phillips on Mechanics' Liens, sec. 60.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit instituted in the Supreme Court of the District of Columbia by the appellants, Robert and James M. Leitch, as complainants, to enforce an alleged mechanics' lien claimed by them upon the building and real estate of the appellee for materials furnished by them to a sub-contractor upon the building. The proceeding was by bill in equity, to which a demurrer was interposed by the appellee; and the demurrer being sustained by the court below, the bill was dismissed. From the decree of dismissal the present appeal has been prosecuted.

From the bill of complaint it appears that the defendant, The Central Dispensary and Emergency Hospital, a body corporate under the general incorporation laws of the District of Columbia, had contracted, on or about the 7th day of July, 1891, with one James R. Young, presumably a builder, for the erection by him of a hospital building for the use of the defendant on lot numbered 10, in square

numbered 228, in the city of Washington, for a price stated to be unknown to the complainants, and of which the defendant is called upon to make discovery. After the execution of this contract Young, the builder, entered into an agreement with one John Lyon, a plumber and steam heater, whereby the latter contracted to furnish all the material and labor required for the steam heating and plumbing necessary in the erection of the building. The price to be paid by Young to Lyon is also stated to be unknown to the complainants, but known to the defendant; and the latter is called upon to make discovery of this also.

Thereafter Lyon, the sub-contractor, entered into a contract with the complainants whereby the complainants agreed to furnish all the plumber's material necessary for the steam heating and plumbing of said building at the regular market price therefor, which price, however, is not stated in the bill. Under this contract with Lyon, the complainants furnished to him plumber's materials, which were actually used in the construction of the building, to the value of $3,684.84, no part of which, it is stated, has been paid.

The building was commenced on July 7, 1891, and completed July 28, 1892; and on September 28, 1892, which was within three months after the date of completion, the complainants filed in the office of the clerk of the Supreme Court of the District of Columbia a notice of their intention to hold a mechanic's lien on the building and lot of the defendant for the sum of $2,000, with interest from September 28, 1892—which sum, it is alleged by the bill of complaint, " was a clerical error," " the true amount being $3,684.84, as alleged." But it is not explained how the error came to be made, or why it is designated as "a clerical error." But in the view which we take of this case, this matter is unimportant.

Complainants claimed in their bill to be material men in the contemplation of the so-called mechanic's lien law, and as such to be entitled to a lien for the amount of their claim;

and the prayer of their bill was for the enforcement of the
lien. The court below, upon demurrer to their bill, as
stated, held adversely to their claim ; and it is that decision
which we are here asked to review.

The mechanics' lien law, under which this question arises,
is the act of Congress of July 2, 1884 (23 Stat. 64), which
purports to be an amendment of the provisions of the Re-
vised Statutes of the United States for the District of Co-
lumbia relating to the same subject. The first section of
this act provides as follows :

" That every building hereafter erected or repaired by the
owner or his agent in the District of Columbia, and the lot
or lots of ground of the owner upon which the same is
being erected or repaired, shall be subject to a lien in favor
of the contractor, sub-contractor, material man, journey-
man and laborer, respectively, for the payment for work or
materials contracted for or furnished for or about the erec-
tion, construction or repairing of such building, and also
for any engine, machinery or other thing placed in said
building or connected therewith so as to be a fixture : *Pro-
vided*, that the person claiming the lien shall file the notice
prescribed in the second section of this act : *Provided further*,
that the said lien shall not exceed or be enforced for a
greater sum than the amount of the original contract for
the erection or repair of said building or buildings."

The question to be determined is, whether the complain-
ants, the appellants here, were " *material men* " in the sense
of this act, such as that they are entitled to claim a lien
under its provisions.

That very question was determined by the Supreme Court
of the District of Columbia in general term in the case of
*Monroe* v. *Hannan*, 7 Mackey, 197, which was decided in
the year 1889, and constituted an authoritative exposition of
the law at the time of the inception of the claim of the com-
plainants. That decision was adverse to the present con-
tention of the appellants. But it is argued that this court
is not bound by that decision, and that the decision itself is

erroneous in not having recognized a distinction assumed to have been made by the statute between sub-contractors and material men.   If that decision is erroneous, we will not regard ourselves as bound by it; if it is correct, we will not hesitate to re-affirm the doctrine therein stated.

1.  While it has been repeatedly held, and undoubtedly it is the law, that the right to a mechanics' lien under statutes like ours does not depend upon the existence of any contractual relation between the person claiming the lien and the owner of the property, yet it is equally true that no one except a contractor or a sub-contractor is entitled to such a lien.   Privity of contract between the owner and the claimant is not required; but at the same time no one may make himself the creditor of another person against the will of that other person unless he can in some way connect himself with him by contract.   There is such a connection in the present instance.   The appellants are undoubtedly sub-contractors.   They so state in their bill of complaint; and without such a statement they would have no standing in court.   Material men are necessarily either contractors or sub-contractors; for without a contract with the owner of the property, or the builder, or some previous contractor or sub-contractor, by which they can connect themselves with the building, it is impossible that they should have any right of lien upon the property.

The statute enumerates *contractors*, *sub-contractors* and *material men* as distinct and independent classes for whom the right of lien may exist; and it is therefore argued on behalf of the appellants that the rights of material men under the statute are not to be confounded with those of sub-contractors.   And it is claimed that this distinction was not observed in the case of *Monroe* v. *Hannan.*

This distinction does not appear to us to be material.   So far as it has any substantial existence in the law, it is only to differentiate those who merely furnish materials to a building from those who do the work or furnish both work and materials.   The builder, the carpenter, the bricklayer

and the plasterer usually fall into the latter class ; the lumberman, the hardware man, the brickmaker, come under the former designation. The distinction does not aid us to determine how nearly or how remotely the parties must be connected with the owner of the building in order to become entitled to the benefit of the lien. Does the right extend to sub-contractors or material men in the remotest degree ? Or is it confined to the first contractor, and to those who have immediate relations with him as sub-contractors or material men ? There is certainly no middle ground ; and we must adopt either one or the other of the alternatives indicated.

If the position of the appellants is correct, then the person who, in some remote region of the globe, extracts from the bowels of the earth the iron ore, which, after passing through the elaborate processes of the foundry and the machine shop, finds its way into the wholesale warehouses and thence into the retail stores, may claim a lien for it against the owner of a building in which it finds its ultimate use, if he can only trace the product of his labor through its many ramified operations and transformations into that ultimate use. And so the owner of a distant forest from which a tree is felled, which is cut up into lumber and then manufactured into doors and window sashes, may likewise have a lien upon the building in which those doors and window sashes are placed, if he can trace the product of his land to that final destination. We cannot think that a statute, which by its designation was apparently intended merely to protect the mechanics engaged in the construction of buildings, should have so far-reaching an operation.

Undoubtedly the statute was intended, as it purports to be, for the protection of the mechanics and laborers immediately connected with the construction of buildings, and to give them a remedy somewhat analogous to the right of lien given by the common law to mechanics to whom personal property is delivered for repair or manufacture, and who expends their labor upon it or contribute material for

such manufacture.   The persons for whom the law was intended to provide a remedy, are the persons who are naturally within the contemplation of the owner of the property when he enters upon the enterprise of construction.   The owner of property, when he contracts with a builder for the construction of a building for him, knows that the latter must necessarily sublet certain branches of the work.   The builder, who is usually, although not necessarily, a carpenter, must enter into sub-contracts with the bricklayer, the lumberman, the plasterer, the tinner, the plumber, the dealer in hardware, and perhaps various other artisans and mechanics ; and with these the owner of the property expects to be brought into relation and contact.   He expects to have occasion to inspect their work, and to have an interest in the mode of the performance of their several contracts. Legislatures, therefore, have not deemed it unreasonable to give such persons direct rights against the owner and against his property.   But we cannot suppose that it was the legislative purpose to confer such extraordinary rights upon other persons, who might perhaps be remotely connected with the enterprise, but with whom the owner of the property could not have anticipated that he would hold any relations, over whose work he could have no supervision and of whose existence even he might be wholly unaware.

Undoubtedly a material man, in the sense of the statute, is one who directly contributes materials for the construction of a building to the owner or builder thereof, with the well-recognized understanding that he is doing so on the faith and pledge of the building itself.   It does not mean a person who, in some remote degree, in some remote way, and possibly in some remote place, contributes upon credit materials which ultimately find their way into the construction of the building.   This would be in effect to give a right of lien to two or more different persons for the same specific material—an absurdity which we cannot suppose to have been contemplated by the body which made the law.

It is argued on behalf of the appellants, that no inconven-.

ience would result from the construction of the statute that would let in material men to the most remote degree to a participation in the benefits of the law, inasmuch as under the express terms of the statute, as it has been construed, the lien shall not exceed the total amount of the original contract between the owner and the builder ; that is, that there can be no recovery against the property or its owner beyond the balance that may be due from him to the builder—or, in other words, that the right of recovery by the claimant of the lien depends upon the condition of the account between the owner and the builder. This, however, is not a correct statement of the law with reference to remote claimants. It is conceded by counsel in the present case that the right of the complainants to recover would depend not only on the condition of the accounts between the owner and the builder, Young, but also on the condition of the accounts between Young and Lyon, and between Lyon and the complainants ; and upon this theory they have very properly made both Young and Lyon parties to their proceeding. But the owner of property is entitled to be relieved, not only from liability, but equally from accountability, to persons with whom he has had no relations whatever either directly or indirectly, and with whom he cannot be supposed ever to have contemplated accountability. If he is to be made accountable to any and all persons who, in any degree, near or remote, have contributed labor or property, the result of which has ultimately gone into his building, his position would be intolerable. He would be liable to a multiplicity of suits for an accounting, against which he could not by any possibility have protected himself. We cannot give the statute a construction that would lead to so much hardship.

An incidental result of the argument on behalf of the complainants is that it would give the intermediate parties—any two intermediate parties, in fact—the power to destroy the lien by a settlement between themselves, without the knowledge or consent either of the owner of the property

or the claimant of the lien.   If, in the present instance, Young and Lyon had settled with each other in full, and the complainants had received nothing, and there was still a large balance due from the owner of the property to the builder, Young, it could scarcely be claimed with any show of propriety or justice that there would still exist a right of lien against the property on behalf of the complainants. And this of itself is sufficient to show the untenable char-acter of the construction which the complainants claimed we should give to the statute.

What seems to us to be the dictate of reason in this matter, is abundantly supported by the great preponderance of authority in the construction of similar statutes in other jurisdictions.   *Wood* v. *Donaldson,* 17 Wend. 550; *Kirby* v. *McGarry,* 16 Wis. 68; *Harbeck* v. *Southwell,* 18 Wis. 418; *Duff* v. *Hoffman,* 63 Pa. St. 193; *Harlan* v. *Rand,* 27 Pa. St. 574; *Stephens* v. *Railroad Co.,* 29 Ohio St. 227; *Schaar* v. *Ice Company,* 149 Ill. 441; *Ahern* v. *Evans,* 66 Ill. 125; *Rothberger* v. *Dupuy,* 64 Ill. 452.   Only two cases have been cited to us that hold a contrary doctrine; and these are the cases of *Barker* v. *Buell,* 35 Ind. 297, and *Stewart & Co.* v. *M. P. Railroad Co.,* 28 Neb. 39, which likewise arose under statutes apparently not very different from our own.   But we cannot assent to the reasoning or accept the conclusion reached in these cases, which must be regarded as standing alone in the great mass of adverse judicial decision.

We are of the opinion, therefore, that the material men intended to be protected by the statute are those only who occupy the position of contractors or sub-contractors, and who furnish materials for the construction of a building, either directly under contract with the owner, or directly or indirectly under immediate contract with the builder or principal contractor.   This was likewise the opinion of the court below; and the action of that court in sustaining the defendant's demurrer must therefore be affirmed.

2. In view of the conclusion which we have reached

with reference to the principal question in this case, the two other questions that were raised by the demurrer become unimportant. These are, 1st, Whether the suit can be maintained for a larger sum than was mentioned in the notice of lien which was filed in the clerk's office; and, 2d, Whether it was good ground of demurrer that the names of the defendants were not stated in the conclusion of the bill of complaint, as seems to have been required by some rule of the court below.

3. It is assigned as error by the complainants, although not insisted upon either in the brief or in the oral argument on their behalf, that the bill of complaint should not have been dismissed, but that leave should have been granted to amend the bill. This assignment might have become important, if the demurrer had been sustained on either one of the two grounds last mentioned. But the decision having been on the merits, and our concurrence in that decision being placed upon the same ground as in the court below, it is not apparent that it was possible to amend the bill so as to give the complainants a standing in court. Moreover, no leave to amend was asked for; and while it is usual to grant such leave when it is asked for, it is not usual to force it upon complainants who do not ask for it; and certainly the failure of the court to grant such leave cannot consistently with any known rules of pleading be held by us as error.

It is our conclusion that *the decree of the court below was right, and that it should be affirmed, with costs. And it is so ordered.*