HERCULES POWDER COMPANY *et al. v.* KNOXVILLE, LA
FOLLETTE & JELLICO RAILROAD COMPANY.

(*Knoxville.* September Term, 1904.)

1. **LIENS ON RAILROADS.** For explosives as materials used
in blasting.

Explosives furnished to be used in blasting rock in railroad tun-
nels and in the grading of a railroad, and so used, are materi-
als for which the furnisher is entitled to a lien under statutes
giving liens to furnishers of materials for the construction of a
railroad. (*Post, pp.* 384-400.)

Acts cited and construed: 1883, ch. 220; 1891, ch. 98.

Cases cited and approved: Chemical Co. v. Railroad, 59 Mo. App.,
6; Chemical Co. v. Byrnes, 21 How., Prac., 189; Wood v. Don-
aldson, 17 Wend., 550; McDermott v. Palmer, 8 N. Y., 383; Min-
ing Co. v. Gallagher, 5 Colo., 23.

Cases cited and distinguished: Knapp v. Railroad, 6 Mo. App.,
210; Powder Co. v. Railroad, 42 Fed., 474, 8 L. R. A., 700; Bass-
hor v. Railroad, 65 Md., 99.

2. **SAME.** Statutes liberally construed in favor of laborer or
materialman.

The statutes giving liens on railroads for their construction will
be liberally construed in favor of the laborer or materialman.
(*Post, p.* 399.)

Case cited and approved: Bladen v. Railroad, 97 Tenn., 393.

3. **SAME. Notice within ninety days after last delivery under contract to furnish materials for railroad construction secures lien on all deliveries, when.**

Where a materialman agrees with a railroad subcontractor to furnish him all the materials required for the construction of a railroad, which are furnished and delivered pursuant to the contract as and when needed and required by the purchaser, the contract is an entirety, and a notice of the claim of a lien made within ninety days from the date of the last delivery, secures the lien on all the deliveries, though some were made more than ninety days before such notice. (*Post, pp.* 385, 386, 388, 400-404.)

Acts cited and construed: 1883, ch. 220; 1891, ch. 98.

Code cited and construed: Sec. 3540 (S.).

Cases cited and approved: Daniel v. Weaver, 5 Lea, 393; Green v. Williams, 92 Tenn., 220; Manufacturing Co., v. Falls, 92 Tenn., 607; Basham v. Toors, 51 Ark., 309.

4. **SAME. Same. Notice within ten days after the breach of a contract by insolvency and abandonment of work by a subcontractor secures lien on previous deliveries.**

The fact that the last shipment of materials to a railroad subcontractor was not delivered but stopped *in transitu*, because of the purchaser's insolvency and abandonment of the railroad construction contract, does not affect the seller's right of lien against the railroad for the materials previously furnished to such subcontractor, though furnished more than ninety days prior to the notice of the claim of a lien, where such notice is given within ten days after the failure of the subcontractor, and his consequent breach of the contract. (*Post, pp.* 389, 400, 401.)

5. **SAME. Lien exists for materials furnished to a subcontractor unless definitely shown not to have been used.**

Where materials for the construction of a railroad are in good faith furnished and delivered to the subcontractor, and there is no definite proof that they were not so used, a lien will be declared in favor of the materialman. (*Post, pp.* 404-408.)

**6. SAME.** Whether lien exists for materials furnished but not actually used, not decided but indicated to exist.

The question is not decided but expressly reserved, yet it is indicated to be the opinion of the court that a lien exists in favor of a materialman for materials furnished a subcontractor for the construction of a railroad, although they are not actually used for that purpose. (*Post, pp.* 404-408.)

Cases cited and approved: Daniel v. Weaver, 5 Lea, 392; Lumber Co. v. Railroad (Neb.), 44 N. W., 48.

FROM ANDERSON.

Appeal from the Chancery Court of Anderson County. —HUGH G. KYLE, Chancellor.

SHIELDS, CATES & MOUNTCASTLE, for Powder Company.

CORNICK, WRIGHT & FRANTZ and X. Z. HICKS, for Railroad.

NORMAN B. MORRELL, for Cole & Co.

MR. JUSTICE WILKES delivered the opinion of the Court.

This bill seeks to fix a lien upon the railroad company for the cost of powder and other blasting material furnished to construct the railroad and blast a tunnel on its line known as "Dossett's Tunnel."

Mason, Hoge & Co. had a contract with the railroad company to build the road, excavate the tunnel, and furnish all the necessary material for that purpose.   They sublet the excavating and boring of this tunnel to Cole & Co., who in terms agreed to do all the work and furnish all necessary material and labor for that purpose. Cole & Co. made a contract with each of the complainant companies, to wit, the Hercules Powder Company and the Repauno Chemical Company, by which they agreed to buy from these companies all of the explosives and explosive supplies which would be required in the excavation or boring of said tunnel.

The powder company furnished under its contract four bills or lots—one October 13, 1902, amounting to $2,200; one May 27, 1903, $2,200; one July 8, 1903, $480; and the last September 18, 1903, $384.36.

Cole & Co. paid on account $721.46, leaving due $4,543.90.   All of the material bought by this company was used in the construction and boring of this tunnel.

The chemical company furnished in March, 1903, $4,534.03 of explosive material, and Cole & Co. paid it on account $3,636.76, leaving a balance unpaid of $897.36.

About October 1, 1903, Cole & Co. announced to its creditors that they were insolvent, and could not complete their contract with the railroad.

On October 10, 1903, each of complainant companies notified the railroad company that they had furnished

explosive materials to Cole & Co., for which they had not been paid, as before stated, and that they claimed liens upon the railroad company for the amounts due them.

Upon the hearing the chancellor held that complainants had no lien for the explosive materials furnished Cole & Co. as against the railroad, and dismissed the bill, and complainants appealed.

In the court of chancery appeals the majority of that court were of the opinion that explosives used in excavating a roadway through a tunnel in building a railroad was material within the meaning of the Acts of 1883 and 1891, and that complainants under these acts were entitled to liens upon the railroad property, provided proper notices were given the railroad as provided by those acts.

It held, however, that the Repauno Chemical Company had not given such notice, and was entitled to no lien, and that the Hercules Powder Company was entitled only to a lien for the explosives furnished Cole & Co. within ninety days of November 10, 1903, when notice of the lien was given the railroad company; and under this holding adjudged the powder company entitled to a judgment for $384.36.

The Hercules Powder Company assigns as errors that part of the holding and decree of the court of chancery appeals which finds and adjudges that it is only entitled to a lien upon the Knoxville, Lafollette & Jellico Railroad Company's railroad and property for the blasting

materials furnished to Cole & Co. within ninety days from November 10, 1903, the date of said notice, and that it is not entitled to a lien for the whole balance due to it for blasting materials furnished under its said contract with Cole & Co., amounting to $4,543.90.

The court of chancery appeals found that G. H. Cole & Co. agreed and contracted with the Hercules Powder Company to buy from it all of the explosives needed in the excavation of Dossett's tunnel under their contract with Mason, Hoge & Co.; that said explosives were to be furnished in the quantities and as ordered by G. H. Cole & Co., and were to be paid for within thirty days after they were used; that the Hercules Powder Company actually delivered goods to Cole & Co. under said contract on September 18, 1903, and that on October 10, 1903, the Hercules Powder Company gave the notices required by the Acts of 1891 of the fact that it had furnished said material and claimed said lien.

It is assigned as error that under these facts the court of chancery appeals should have held, and erred in not holding, that the contract to furnish said blasting material was an entirety, and that the Hercules Powder Company had ninety days from the date that the last material was delivered under said contract within which to give said notice, and that the giving of said notice on October 10, 1903, entitled the complainant to a lien for the full balance due to it for the material furnished as aforesaid, which is found by the court of chancery appeals to be the sum of $4,543.90.

The Repauno Chemical Company assigns as error
that part of the decree of the court of chancery appeals
which finds and adjudges that it is not entitled to a lien
upon the Knoxville, Lafollette & Jellico Railroad Com-
pany's railroad and property for the balance due it for
the materials furnished by it to Cole & Co., with which
to excavate said Dossett's tunnel. It is claimed that said
court should have held, and erred in not holding, that
the Repauno Chemical Company was entitled to a lien
upon said railroad company's railroad and property
under chapter 220, page 296, of the Acts of 1883, as
amended by chapter 98, page 215, of the Acts of 1891,
and should have decreed, and erred in not decreeing,
that complainant was entitled to have said railroad
company's railroad and property sold for the satisfac-
tion and payment of complainant's said claim.

The court of chancery appeals based its decree deny-
ing the Repauno Chemical Company said lien on the
ground that it did not deliver any of said material
within ninety days of the date of its said notice to the
railroad company that it claimed said lien.   With ref-
erence to the facts governing this claim the court of
chancery appeals said:

"The complainant Repauno Chemical Company made
a contract with Cole & Co., as before stated, to furnish
all the explosives and explosive supplies needed in their
contract with Mason, Hoge & Co., and all the material
actually furnished under this contract by the Repauno
Chemical Company was shipped on March 9 and March

17, 1903, to Cole & Co., and aggregated in value the sum of $4,534.03. Under its contract with Cole & Co. the powder used in each month was to be paid for by Cole & Co. in the following month. Cole & Co. are entitled to credit on said amount of $3,636.76, leaving a balance due the Repauno Chemical Company of $897.27.

"About October 1, 1903, Cole & Co. announced to their creditors that they were insolvent, and could not complete their contract. At this time Cole & Co. had ordered other goods from the Repauno Chemical Company under their contract with it, and said goods were in transit to Cole & Company. The delivery of the same, however, was stopped by the Repauno Chemical Company upon receiving information that Cole & Co. were insolvent, and they afterwards sold to Mason, Hoge & Co."

The Repauno Chemical Company gave its notice October 10, 1903.

The complainants assign as error that part of the decree of the court of chancery appeals dismissing the bill as to the Repauno Chemical Company, and denying the Hercules Power Company a lien for the full amount of the balance due it for explosive materials furnished to G. H. Cole & Co. and in taxing complainants with a part of the costs.

It is contended that the court of appeals should have found and decreed, and erred in not finding and decreeing, that the complainants were entitled to a lien against the railroad and property of the Knoxville, La-

follette & Jellico Railroad Company for the full amount of the respective claims sued for by them in this cause, together with interest and all the costs of this cause.

The defendant, by its assignments of error, and in defending against complainants' assignments, raises the question whether the explosive supplies furnished by complainants constitute material within the sense and meaning of the statutes and laws of Tennessee relating to liens of furnishers of materials used in the construction of railroads as set out in the Acts of 1883 and 1891.

The complainants rely for their liens upon the provisions of the Acts of 1883, page 296, chapter 220; the first section of which is in the words and figures following: "Section 1. Be it enacted by the general assembly of the State of Tennessee, that where any railroad company contracts with any person or persons, for the grading of its roadway, the construction or repair of its culverts and bridges, the furnishing of cross-ties, the laying of its track, the erection of its depots, platforms, wood or water stations, section houses, machine shops or other buildings, or for the delivery of material for any of these purposes, or for engineering or superintendence there shall be a lien upon such railroad in favor of the person or persons with whom the railroad company contracts for the performance of the work, or the delivery of the materials to the amount of the debts contracted therefor, which lien shall continue in force for six months after the performance of the work or the delivery of the material, and until the ter-

minal of any suit commenced within the time for its enforcement;" and upon the provisions of chapter 98, page 215, of the Acts of 1891.

That act provides, in substance, as follows: "Section 1. Be it enacted by the general assembly of the State of Tennessee that section 3 of the act passed March 29, 1883, as referred to in the caption of this bill, the same being section 2778 of Milliken and Vertrees' compilation of the laws of Tennessee, be and the same is hereby so amended as to provide that hereafter every subcontractor, laborer, materialman or other person who performs any part of the work in grading any railroad company's roadbed," etc., "or for the delivery of material for any of these purposes, . . . all and every such person or persons shall have a lien on such railroad, its franchises and property for the value of such work and labor done or material furnished or services rendered as hereinbefore set out and specified, in as full and ample a manner as is now provided by law for persons contracting directly with such railroad company for any such work and labor done."

In other words, the act of 1891 was passed for the express purpose of extending to all subcontractors and furnishers of material the same lien that was guaranteed by the act of 1883 to persons contracting directly with the railroad company.

For the railroad it is insisted that the term "materials," as used in these acts, means something which enters into the construction of the roadway and

forms a part of it, and cannot be held to apply to such material as is consumed in constructing the roadway, and, being consumed, it constitutes no part of the road-bed or roadway after it is constructed.

We are of opinion that the general assembly intended to give persons who furnished materials for grading the roadbed a lien, as well as those who furnished such material as was used in the superstructure placed upon the roadbed after it was graded, such as cross-ties, culverts, etc.

The fact that the materials were consumed in the use, and were thus destroyed in the construction, we think does not deprive the furnisher of his lien. The consumption of explosives is the only use that can be made of them, and their consumption is absolutely necessary to the excavation of tunnels through rock. In other words, they are material which enter into the building and grading of the road as much so as trestles, bridges, and culverts contain materials which are necessary to the grading of the road at such places as require trestles and bridges and culverts.

It is difficult to see what other material than explosives could be used in boring a tunnel and grading a road through stone.

While the general definition of the word "materials," as given by the lexicographers, may not go to this extent, and there are some cases holding apparently a different doctrine, we think the word must be defined

in the connection and for the purposes for which it is used and intended to be applied.

In *Knapp* v. *Railroad,* 6 Mo. App., 210, the court said: "The theory of statutory liens of this class [on railroads] is that the laborer or materialman is entitled to a certain beneficial interest or security in the structure whose value is increased by his labor and materials actually incorporated therewith."

Yet in the later case of the *Rapauno Chemical Company* v. *The Railroad,* 59 Mo. App., 6, it was said, construing a Missouri statute similar to ours, as follows: "The rule to be deduced from the foregoing authorities is that, in order to maintain a lien for materials furnished, it is not necessary in all cases that such materials should actually have gone into the structure and formed a part thereof. It is sufficient if their use was necessary; and they were in fact used or consumed in the making of the improvements. Hence we think that the argument is unsound that the lien in the cases here must fail because the powder was entirely consumed, and therefore could not have been actually incorporated in the work. Such a construction of the statute we conceive to be a strained one, and not within its equity or spirit. What was said on this subject by the supreme court in the case of *Simmons* v. *Carrier,* 60 Mo., 581, must be read in the light of the particular facts of that case. There the claim was for lumber. The court held that a lien could not be maintained for such material unless it actually entered into the construction

of the building. This was undoubtedly a proper construction of the statute as applicable to lumber and such like materials to be used in or on the improvements; but, in our opinion, it is unreasonable to apply such a test to powder which is entirely consumed in its use." *Rapauno Chemical Co.* v. *Greenfield & N. Ry. Co.,* 59 Mo. App., 6.

The lien statute of Missouri (Rev. St. 1889, sec. 6741) reads as follows: "All persons who do any work or labor in houses, depots, bridges or culverts of any railroad company, incorporated under the laws of this State or owning or operating a railroad within this State, and all persons who shall furnish ties, fuel, bridges or material to such railroad company, shall have for the work done and labor performed and for the material furnished, a lien," etc.

The question under consideration has been before the New York courts. *Hazard Powder Company* v. *Byrnes,* 21 How. Prac., 189. The statute of New York provides that any person who shall, in conformity with the terms of the contract between the owner and contractor, furnish to the contractor any materials in building any house or building shall have a lien on the improvement. In the case above cited the plaintiff claimed a lien for powder and fuses furnished the contractor for the purpose of blasting rock preparatory to laying the foundation walls for the defendant's building. In delivering the opinion of the court, Judge Hilton said:

"I think that the fair and reasonable interpretation

Powder Co. v. Railroad.

of such language is that the right of a lien extends to all such materials as ordinarily enter into or are used in the construction of buildings, and which are in the express or implied terms of the building contract made between the owner and contractor. *Wood* v. *Donaldson*, 17 Wend., 550; *McDermott* v. *Palmer*, 8 N. Y., 383. Here the contract imposed upon the builder the duty of removing rocks from the surface of the land preparatory to laying the foundation walls, and hence the powder and fuses furnished became necessary for the purpose of blasting the rock and enabling the contractor to construct the contemplated building. Such materials, when thus impliedly contracted for, and actually furnished and used, must, I think, be classed within the list of things which are denominated in the lien law as 'materials in building,' and for which a lien may be acquired."

In Colorado there is a lien statute applicable particularly to mines, wherein it is provided that any person furnishing "timber or other materials to be used in or about the mines shall have a lien therefor." In *Keystone Mining Co.* v. *Gallagher*, 5, Colo., 23, one of the claimants had furnished powder, steel, and candles, which were used in working the mine, and for which he claimed a lien on the mine. In disposing of the objections made to this claim the court said:

"It is objected that the decree as to Boettcher's claim is erroneous, because the articles furnished by him were not of the character comprehended by the lien law, spe-

cifying 'timber or other materials to be used in or about the mine.' The testimony shows that the articles furnished were powder, steel, and candles for the use of the mine. These articles are as clearly within the meaning of the statute as anything we can conceive of essential to the working of a mine."

In the last edition of Mr. Elliott's work on Railroads, under the heading, "For what lien may be obtained," the rule is laid down as follows: "The nature of the claim for which a lien may be acquired depends, of course, upon the governing statute in each particular case. It is generally required that the labor should be performed or the material used in the construction of the road. Under such a statute it has been held that giant powder furnished to be used and used by the contractor in constructing the road is 'material' for the value of which a lien may be acquired; but a lien cannot be obtained for machinery furnished to a contractor to be used in doing the work upon a bridge, under a statute authorizing a lien for all materials 'used in and about' the construction of the bridge. So, of course, groceries and food furnished for the workmen, while in a sense used in the construction of the road, are not materials which so enter into its construction that a lien can be based upon them." Elliott on Railroads, p. 1597, sec. 1068.

All of the decisions upon this subject draw a clear distinction between the explosives and explosive supplies used in the construction of a railroad company's

roadway, and which are necessarily consumed in the use thereof, and machinery and tools furnished for that purpose, which are held to be a part of the contractor's plant, and which do not go into the building of the roadway, but retain their identity and fitness for future use, saving the limited and gradual wear and tear incident to such use. The explosives which are necessarily consumed in the use are held to be liens, while the tools and equipment which constitute the contractor's plant do not constitute liens under the several lien statutes. This distinction is forcibly drawn and fully discussed in the case of *Giant Powder Company* v. *Oregon Pac. Ry. Co.*, reported in 42 Fed., 474, 8 L. R. A., 700. In that case the Giant Powder Company brought suit to recover the value of powder sold by it for use, which was used in the construction of the roadway of the Oregon Pacific Railway Company, and to have the same declared a lien upon the defendant's railroad and property under section 1 of the Acts of the Oregon legislature for the year 1885.

In deciding that case, Judge Deady, of the United States circuit court, said:

"Was this material 'used' in the construction of this section on this road, within the meaning of this statute?"

"In *Basshor* v. *Railroad Co.*, 65 Md., 99, 3 Atl., 285, cited by counsel for the demurrer, it was held, under a statute giving a lien on a bridge for all materials used 'in or about' its construction, that a person furnishing

a contractor with machinery wherewith to build a bridge could not have such lien.

"Admitting the correctness of this decision, as I do, the cases are not, in my judgment, parallel. The machinery and appliances furnished the contractor in that case, although 'used' in the construction of the bridge, did not enter into the structure and become a part of it. They were the contractor's 'plant,' and retained their identity and fitness for further use, saving the limited and gradual wear and tear incident to such use.

"This powder was not only 'used' in the construction of this road, but it was thereby necessarily consumed, and it was so intended. It was furnished to be so used in the construction of this road. Nice questions may arise as to whether material is 'used' in the construction of a road as a tool or plant simply, or so used and consumed as to entitle the furnisher to a lien on the result for its value.

"The food furnished a contractor for his workmen may be said to be 'used' and 'consumed' in the construction of the road on which they work, but this is only so in a remote and consequential way or sense. The food does not enter directly into the structure, and is not so used. Masonwork may be done on a road in a dry country or season, when large quantities of water must be hauled many miles for the preparation of the necessary mortar. Upon the completion of the structure and the hardening of the mortar the water has as thoroughly disappeared as the powder after the blast. Again, lum-

Powder Co. v. Railroad.

ber may be used in the construction of a building for the purpose of scaffolding. However, it does not thereby literally enter into the composition of the building, nor, so to speak, become a part of it. But, in my judgment, both it and the water have been 'used' in the construction of the building and masonwork, within the meaning of the lien law, and the purpose for which it was enacted.

"And so I think this powder was 'used' in the construction of this section of the road, whereby it was consumed not gradually and incidentally as a tool or part of a contractor's plant, but wholly and at once, in aiding to clear and fix the roadway for the reception of the ties and rails."

It may be that the statutes under which these decisions are made are somewhat broader than our own statute, but the principle involved is the same, and to such statutes the courts will give a liberal construction in favor of the laborer or materialman.

Thus, in *Bladen* v. *Railroad*, 97 Tenn., 393, 37 S. W., 135, it was held, construing the act of 1891, that a bookkeeper of a bridge contractor and the cook and cook's helpers employed by him for the bridge gang, had a lien on the railroad for salary and wages under the provision giving a lien to any one who performs any valuable service, manual or professional, by which any railroad company receives a benefit.

We are of opinion, therefore, that explosives used in blasting rock in tunnels and in the grading of the road

are materials for which, under the act, the furnisher is entitled to a lien.

We pass now to the question whether complainants gave the notice which the statute requires.

The provision of the statute in regard to notice is: "Provided, that within ninety days after such work and labor is done or completed or such materials are furnished, or such services are rendered such subcontractor, laborer, materialman or other person or persons rendering the hereinbefore mentioned service shall notify in writing any such railroad company," etc.

The shipments by the Hercules Powder Company to Cole & Co. were made as follows: October 13, 1902, $2,200; May 27, 1903, $2,200; July 8, 1903, $480; and September 18, 1903, $384.36. Only the last sale and shipment of $384.36 was delivered within the ninety days next before the notice was given November 10, 1903.

It is evident that the account between the powder company and Cole & Co. was a running account; that the powder was furnished from time to time as was demanded by Cole & Co.; and the sales were not separate and distinct, but the contract was an entirety, to be performed by shipments from time to time as might be desired.

The whole of the explosives furnished by the Repauno Company was furnished before the ninety days. A shipment made within the ninety days was stopped in transit, and it is not in controversy in this case. On

Powder Co. v. Railroad.

October 10, 1903, Cole & Co. notified their creditors of their insolvency. At that time the Repauno Chemical Company had a shipment in transit to them, which was stopped only because of this insolvency. It was being shipped in pursuance of that company's contract to furnish the explosives, and, if they had been received, the case presented would be identical with that of the powder company, as the Repauno Chemical Company gave their notice on the same day, November 10.

We think that this contract must also be regarded as an entirety, and in each case the ninety days must be reckoned from the date of the last shipment in pursuance of the entire contract.

The fact that the last shipment was not delivered was due to the abandonment of the work by Cole & Co. and their notice of insolvency, and within ten days after the contract was terminated by the wrongful conduct of Cole & Co., and within ten days from the time when the last delivery would have been made but for their failure the notice as given.

Under the construction given to this act by the court of chancery appeals with reference to the claims of both of the complainants, in order to obtain a lien under said act it is necessary that furnishers of material should give notice every time within ninety days after they deliver a wagon or a car load of material, although they had an agreement with the contractor to furnish all of the material necessary to complete the contract.

113 Tenn—26

Not only this, but, carrying this construction forward to the other parties who are given liens by said acts, it would be necessary for the laborer, or engineer, or superintendent in whose favor liens are provided by said acts, to give notice within ninety days after the end of each day's work, although they continue to work and had a contract to work until the whole contract was completed.

Section 3540 of Shannon's Code gives liens to furnishers of material for the erection of buildings and improvements on real estate, provided notice is given within thirty days to the owner of the property; and this court had held that the furnisher of material has thirty days after the last articles furnished for said improvements were delivered, or thirty days after the completion of the contract within which to give said notice. *Daniel* v. *Weaver,* 5 Lea, 393; *Green* v. *Williams,* 92 Tenn., 220, 21 S. W., 520, 19 L. R. A., 478; *Cole Mfg. Co.* v. *Falls,* 92 Tenn., 607, 22 S. W., 856.

In the case of *Basham* v. *Toors,* 51 Ark., 309, 11 S. W., 282, the supreme court of that State said: "Where a contractor abandons a contract when partially completed, the time for presentation of subcontractors' notice begins to run from such abandonment, and not from the completion of the building by the owner under another contract."

The contract in reference to notice, where the contract is an entirety, is laid down in Phillips on Mechanics' Liens (2d Ed.), page 530, as follows:

"So where a party furnishes materials for a building at different times, but in pursuance of one contract, he is in time if he commence proceedings to establish his lien within the period allowed by the statute, counting from the date of the last act done in execution of the contract. As where persons made a contract in May, 1857, with machinists, for all machinery and materials required to build a mill, and received them all at that time excepting the bolting cloth, it being uncertain what kind of cloth would be needed, they informed the machinist that they would order it from them afterwards, which was done, and received in the following September. The machinists commenced proceedings to enforce their lien within the statutory period counting from the last item, but not if from the former; and it was held that, as the cloth had been furnished under the same contract as the other materials, the proceedings were commenced in time to enforce the lien for the whole amount of materials furnished."

So where, in the fall of 1868, plaintiffs contracted with W. to furnish him lumber for the erection of a new dwelling house and the repair of an old one, and they commenced furnishing lumber for that purpose the same season, and continued doing so until the last day of August, 1868. In August, 1868, W. became owner of a second lot immediately adjoining that first mentioned, and removed the old house upon it, and made the repairs on said house in the spring of 1869. In that spring, also, the contract for lumber was enlarged by

plaintiffs agreeing to furnish lumber to build a barn. It
was held that for the purpose of enforcing the lien
against W. it was but a single contract for the whole
lumber, and the time within which it could be enforced
was to be counted from the last delivery.

But it is said that the Repauno Chemical Company
cannot recover, because all the material furnished by it
was not used in the excavation of said tunnel by Cole
& Co.   It is true that Cole & Co. did sell $1,332 of ex-
plosives that had been furnished to them by the Repauno
Chemical Company, and the court of chancery appeals
so finds, but with reference to this sale the court of
chancery appeals says:

"The proof does not make it appear when this sale
was made to Walton, Wilson & Co., and it also fails to
show whether or not the explosives sold by Cole & Co.
to said Walton, Wilson & Co. were paid for to the Re-
pauno Chemical Company out of the actual cash paid
by Cole & Co. to said Repauno Chemical Company."

Section 1, chapter 98, page 215, of the Acts of 1891,
gives the lien claimed in this case to the materialman
"for the delivery of material for any of these purposes"
'(that is, for any of the improvements in the act) ; and
all that is necessary, it is claimed, to entitle the fur-
nisher to a lien, is that he should prove that he delivered
said material to the contractor or subcontractor in
good faith, to be used for any of the purposes provided
for in said act.

In the case of *Stewart Chute Lumber Co.* v. *Missouri*

*Pacific Ry. Co. et al.,* 44 N. W., 48, the supreme court of
Nebraska, quoting their own act, and deciding the ques-
tion now under consideration, said, in substance:

Under Comp. St. Neb. 1887, c. 54, section 2, which pro-
vides that "when materials shall have been furnished
or labor performed in the construction, repair and equip-
ment of any railroad, canal, bridge, viaduct or other
similar improvement, such laborer and materialman,
contractor or subcontractor, shall have a lien therefor,"
the lien of a materialman attaches upon the delivery in
good faith of the material to the contractor or subcon-
tractor, and it is not necessary that the material fur-
nished should have been actually used in the improve-
ment.

Plaintiff furnished lumber and other material to a
subcontractor for the erection of shanty boarding houses
for his men and stables for his horses. These shanties
and stables were not erected on the right of way, but at
convenient points 150 yards from the line of the road.
Held, that the lumber and other materials so supplied
was material furnished in the construction of the rail-
road within the meaning of the Nebraska statute, and
that plaintiff was entitled to a lien therefor. See 39 Am.
& Eng. Ry. Cases, p. 566.

The question presented upon this feature of the case
is one of extreme difficulty. The act gives the lien "for
the delivery of the material." It nowhere makes a condi-
tion that the material shall be used in the construction
of the road. It clearly contemplates that the delivery

shall be in good faith for purposes of construction. But does it require that the furnisher shall follow up his material, and see that it is actually used in the construction? To hold this doctrine would well-nigh defeat the lien, since the furnisher would be obligated with a duty which would be burdensome, if not impossible, to comply with.

On the other hand, it is a hardship to hold the road liable for material that it did not get the benefit of, and to fix the lien upon its property, although such material was neither used nor consumed upon it.

The question is rendered still more difficult in this case by the indefinite findings of fact by the court of chancery appeals. That court finds that not all of the material furnished by the Repauno Company was used upon the road, but that $1,332 worth of explosives furnished by them were sold by Cole & Co. to Walton, Wilson & Co. They do not find that the explosives for which the present charge is made were not used in constructing the road. They do not find that Walton, Wilson & Co. did not pay for the material they bought to Cole & Co., and that Cole & Co. did not turn over the proceeds to the Repauno Company. So that we have no definite finding of fact that the explosives for which recovery is now sought were not used upon the road. Now, if the delivery alone is the act which gives the lien, the chemical company is entitled to their lien.

Our mechanic's lien law provides that every journeyman or other person employed by such mechanic, foun-

der, or machinist, to work on the buildings, fixtures, machinery, or improvements, or to furnish machinery for the same, shall have a lien, etc., and this court, in construing this act, said:

"It is not the actual use of lumber in repairs to a building by the owner that gives the furnisher a lien, but the furnishing under a contract for that use, and the lien exists whether the lumber was used or not." *Daniel & Co.* v. *Weaver,* 5 Lea, 392.

That was a case, however, where the material was furnished to the lessee of a milldam, and the court held that the lien would extend to the leasehold interest but not to the owner's or lessor's interest in the premises. In that case the material was furnished to the party against whom the lien was sought, but here it was delivered to a subcontractor, who stood two removes from the railroad, against whom the lien was sought.

The question resolves itself into this: Who shall be responsible for the good faith of the subcontractor who buys the material, and to whom it is delivered—the furnisher, who sells the material, or the railroad, which expects to use it and receive benefit from it?

The subcontractor, while not the agent of the road, stands in the place of the railroad company as to the construction of the road, and does his work under the superintendence and direction of the road authorities. It is to be presumed that they will, better than any one else, know what materials go into the construction of the road, and certainly better than the furnisher, who

never gets to the premises, and is not concerned further than to sell and get pay for his material.

In addition, the railroad has ample opportunity to protect itself against such defaults by taking proper bonds from its contractors, while, if a furnisher were required to protect himself by such bonds, it would prevent him in many, if not all, cases from making sales.

Without deciding this question, we are content to hold, under the findings of the court of chancery appeals, that this material for which the present action is brought was in good faith delivered to Cole & Co. to be used on the railroad, and there is not definite proof that it was not so used.

The result is that both companies are entitled to the amount sued for, and interest, and all costs, and for these amounts liens are declared, and a decree will be entered accordingly reversing and modifying the decree of the court of chancery appeals and the decree of the chancellor.