STEWART-CHUTE LUMBER COMPANY, APPELLANT, v. MISSOURI PACIFIC RAILWAY COMPANY ET AL., APPELLEES.

[FILED NOVEMBER 21, 1889.]

1. **Material Men**: LIENS: RAILROADS. Sec. 2, ch. 54, Comp. Stats., *held*, to give a lien upon a railroad to *all persons* who shall perform labor or furnish material in the construction of such railroad.

2. ——: ——: ——: MATERIAL FURNISHED SUBCONTRACTOR. Lumber, posts, building paper, and lath, sold by dealers in lumber to a subcontractor engaged in building a railroad, and delivered to him to be used in the erection of shanty boarding houses and stables on or near the line of the railroad for the use of the men and animals employed and used by such subcontractor in and upon such work, *held*, to be materials furnished in the construction of the railroad, within the intent and meaning of the statute. MAXWELL, J., dissents.

3. ——: LIEN ATTACHES AT DELIVERY. In an action to enforce a lien upon a railroad for material furnished in its construction, *held*, that the lien attached immediately upon the furnishing of such material to the subcontractor in good faith by the material man, and that it was not necessary to allege or prove the actual application of such material to the purpose intended. MAXWELL, J., dissents.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*Mason & Whedon,* for appellants:

Sec. 2, art. 2., ch. 54, Comp. Stats., providing for a lien for laborers and material men, is a remedial statute and should be liberally construed. (*Rogers v. Omaha Hotel Co.,* 4 Neb., 48.) The evident intention of the legislature, as gathered from the act itself, was that a railroad company should see that all material used in construction was paid for by the contractor. Such intention is defeated by the narrow construction of the court below, that the material must have been made a permanent part of the road-bed in order that the lien might attach. Under a statute analogous to the above, one who cooks food for men engaged in logging has a lien on the logs for his wages. (*Winslow v. Urquhart,* 39 Wis., 267.) Hence a proper construction of this act would give a lien to one who furnishes material to be used for the shelter of men and teams at work on the grade. By the judgment below, appellant is compelled to lose the price of material furnished in good faith and used in construction, while Casement, Carlile & Co. retain the money due Kavanaugh, and the latter's property is confiscated.

*Talbot & Bryan, contra :*

While lien laws of a general nature are to be liberally construed, they should not be so extended as to include subjects not contemplated by the legislature. (Houck on Liens, sec. 67, p. 79 ; *Phillips v. Stone,* 25 Ill., 77.) Moreover, the act under consideration is a special and not a general lien law. (Overton on Liens, chap. 4, p. 40.) Appellant is a mere vendor of material. It is not therefore within the class specified in, and not entitled to the benefits of, a statute giving a lien to material men, contractors,

and subcontractors; especially as the design of this class of statutes is to enable such parties to obtain credit. (*Burst v. Jackson*, 10 Barb. [N. Y.], 219; *Hatch v. Coleman*, 29 Id., 201; *Sweet v. James*, 2 R. I., 270; *Greenwood v. Tenn. Mnfg. Co.*, 2 Swan [Tenn.], 130; *East Tenn. Mnfg. Co. v. Bynum*, 3 Sneed [Tenn.], 268.) In order that the lien might attach, the material sold should have become a permanent part of the road-bed and enhanced its value. (Houck on Liens, sec. 54, p. 69; *Chapin v. Paper Works*, 30 Conn., 473; *Hunter v. Blanchard*, 18 Ill., 118; *Perkins v. Pike*, 42 Me., 141; *Phillips v. Wright*, 5 Sandf. [N. Y.], 342; Esterley's Appeal, 54 Pa. St., 195; *The Young Mechanic*, 2 Curtis [U. S.], 404, 421; *Basshorr v. B. & O. R. Co.*, 65 Md., 99; S. C., 3 Atl. Rep., 285; in the latter case the court construes a statute similar to ours, but stronger in its provisions.) *Winslow v. Urquhart*, 39 Wis., 267, was under a statute altogether different from ours. The cook, who was there declared to have a lien on the logs, was one of the parties actually engaged in the work. The material in this case was merely a part of the working plant of Kavanaugh, the subcontractor. The principle contended for by appellant, that it should have a lien because its material was used for shelter, would also give a lien on the railroad to the clothier, the harness maker, and the hardware merchant for wares furnished a subcontractor.

COBB, J.

This cause was appealed by the plaintiff from the judgment of the district court of Lancaster county.

The appellant is a private corporation under the laws of Illinois, doing business in this state as the Stewart-Chute Lumber Company.

It alleges that the Missouri Pacific Railway Company is a corporation operating its lines in this state, and that the firm of Casement, Carlile & Co. is a copartnership doing

business in this state, which, with Marcus Kavanaugh, are made defendants.

It sets up that the railway company was engaged in constructing its line between Weeping Water, in Cass county, and Lincoln, in Lancaster county; that Casement, Carlile & Co. were contractors to grade the line; that Marcus Kavanaugh was a subcontractor, under that firm, to grade sections 10, 11, and 12, extending three miles into Lancaster county; that the plaintiff sold and delivered to Kavanaugh lumber and other necessary material to be used, and which was actually used, in the construction of the railroad line in Lancaster county, amounting to $296.19; that subsequently Casement, Carlile & Co. retained that sum from payments due to Kavanaugh, as subcontractor, and still retains the same, without payment to the plaintiff; that on July 6, 1886, within sixty days after furnishing the lumber and other necessary material to the subcontractor, the plaintiff filed for record in the clerk's office of the county clerk of Lancaster county the proper legal statement of its claim, perfecting its lien for the amount stated upon the line of the Missouri Pacific Railway Company in Lancaster county, and that its claim is due from said company and unpaid, for which judgment is asked, and for such certain remedy as the law provides.

The railway company entered its appearance, admitted its corporate capacity, and that the plaintiff is a corporation as alleged, and denied all other allegations.

Casement, Carlile & Co. answered admitting they were contractors as alleged and denied all other allegations.

There was a trial, on submission to the court, a jury being waived, and judgment for the plaintiff against M. Kavanaugh for $332.50, with findings for the defendants, the Missouri Pacific Railway Company, and Casement, Carlile & Co., that the plaintiff take nothing against them, and that they recover their costs; to which the plaintiff excepted on the record, and its exceptions were settled and allowed according to law.

The following sections of chapter 54, art. 2, of the Compiled Statutes contain the provisions of statute law applicable to the case:

"Sec. 2. And when material shall have been furnished, or labor performed in the construction, repair, and equipment of any railroad, canal, bridge, viaduct, and other similar improvement, such labor [laborer] and material man, contractor or subcontractor, shall have a lien therefor, and the said lien therefor shall extend and attach to the erections, excavations, embankment, bridges, road-bed, and all land upon which the same may be situated, including the rolling stock thereto appertaining and belonging, all of which, including the right of way, shall constitute the excavation, erection, or improvement provided for and mentioned in this act.

"Sec. 3. Every person, whether contractor or subcontractor, or laborer or material man, who wishes to avail himself of the provisions of the foregoing section, shall file with the clerk of the county in which the building, erection, excavation, or other similar improvement, to be charged with the lien, is situated, a just and true statement or account of the demand due him after allowing all credits, setting forth the time when such material was furnished or labor performed and when completed, and containing a correct description of the property to be charged with the lien, and verified by affidavit; such verified statement or account must be filed by a principal contractor within ninety days, and by a subcontractor within sixty days, from the date on which the last of the material shall have been furnished, or the last of the labor is performed; but a failure or omission to file the same within the periods last aforesaid shall not defeat the lien, except against purchasers or incumbrances in good faith, without notice, whose rights accrued after the thirty or ninety days, as the case may be, and before any claims for the lien was filed : `Provided`, That when a lien is claimed upon a rail-

way the subcontractor shall have sixty days from the last day of the month in which said labor was done, or material furnished, within which to file his claim therefor ; and, *Provided further*, That when any such material is furnished or work done in any unorganized county in this state, such statement of the demand due, verified as aforesaid, may be filed in any county in this state into or through which any such railroad or canal may run, or in the organized counties lying next nearest east of the county where said work was done or material furnished : *Provided further*, That such lien shall continue for the period of two years, and that any person holding such lien may proceed to obtain judgment for the amount of his account thereon by civil action ; and when any suit or suits shall be commenced on such accounts within the time of such lien, the lien shall continue until such suit or suits be finally determined and satisfied."

Counsel for appellees in the brief state the first and principal question in this case to be, "Was the material sold by appellant to M. Kavanaugh, the subcontractor, used in the construction, repairing, and equipment of appellee's railroad within the meaning of this (the 2d) section?" This is nearly correct, but not strictly so ; accurately stated it is, Was the material sold by appellant to the subcontractor "furnished" in the construction of appellee's railroad within the meaning of the section? There is a wide difference in the meaning of the two words "used" and "furnished" in the connection in which the latter is used in the section, and I think that it was used by the framers of the provision for the purpose and with the intent that the lien should attach upon the furnishing of the material in good faith by the material man, and upon its passing from his control to that of the contractor, subcontractor, or builder of the railroad, and that that word was used with the purpose of preventing a construction which may have been placed upon some former lien

laws, requiring the material man to allege and prove that the material furnished by him was not only delivered to the builder, but was actually used in the building.

The appellee railway company was engaged in the construction of its line from Weeping Water to Lincoln; the defendants, Casement, Carlile & Co., were its contractors for the construction of the road, or that part of it with which we are concerned, and Kavanaugh was the subcontractor under them for the construction of certain sections of the work, near the city of Lincoln. The appellant was a private, incorporated company, carrying on business as a wholesale and retail lumber dealer in the city of Lincoln.

About the time of commencing the construction of the sections of railroad work for which he was subcontractor under Casement, Carlile & Co., the contractors under the railway company, Kavanaugh ordered and purchased from the appellant the material, consisting of lumber, posts, building paper, and lath, set out in the bill of particulars, for which the lien was filed and for which the action was brought. This material was used by the said subcontractor in the erection of shanty boarding houses for the men, and stables for the horses, engaged and used by said subcontractor in the construction of the sections of said railroad work, for which he had the subcontract. These shanties and stables were not erected on the right of way of said railroad, but at convenient points about one hundred and fifty yards from the line of the road. Was this lumber, building paper, posts, and lath material furnished in the construction of the railroad? This question may be discussed at this point because, in my view, when material is once furnished in the construction, repair, or equipment of a railroad, so as to entitle the material man to a lien, under the provisions of the statute which we are now considering the lien attaches upon the furnishing; and it confuses rather than enlightens us to continue the statement of facts as to what was done with the remains or *debris* of this

material; or with the material itself after it was furnished and passed absolutely and entirely from the control or dominion of the material man furnishing it.

No one will doubt that it is the duty of this court, upon a case being presented calling therefor, to ascertain, if it can, the object, meaning, and intention of the legislature in enacting the law referred to. For this purpose we are, first, to look to the language of the law. If its language is plain, its words consistent with each other, and its provisions not inconsistent with those of other statutes nor within any constitutional inhibition, then the intention of the legislature, thus manifest, must be proclaimed as the law of the land. The words of this statute give a lien, first, when material has been "furnished," and second, when labor has been "performed." But it is contended that these words only apply to certain kinds of material or to material used in a certain and limited manner, and not to material "furnished" in the construction of the work generally. Applying the argument to this case, had the lumber and posts furnished by the appellant been used in the construction of a bridge, a depot building, or a water tank of the railroad, so as to remain a visible, tangible, and permanent part of the work, the material man furnishing it would have a lien therefor; but the material, for whatever purpose furnished, if not used so as to become and remain a visible, tangible, and permanent part of the work, would entitle him to no lien. This argument is worthy of respect, and were the appellant seeking to establish and maintain a lien upon general principles of the civil law it would probably be conclusive. But the meaning and force of a statute does not necessarily depend upon the "eternal fitness of things," nor yet upon the assembling together of words expressing ideas logically adapted to each other. It is quite within the all but infinite power of the legislature, in the absence of a constitutional inhibition, to so legislate that those who contribute to the erec-

tion of a building, a railroad, a ship, or a wagon in any way, directly or indirectly, may have a lien thereon for the value of such contribution, without regard to whether the thing contributed be of a substantial or unsubstantial, a visible or an invisible, character.

In the legislation which we are now considering, no discrimination was made between the different kinds or classes of laborers who might perform labor, nor in the different kinds of material that might be furnished, so long as the one was performed and the other "furnished in the construction, repair, and equipment of any railroads," etc. Construing the words of the act, and neither adding to them, nor suppressing any used by the legislature, our task, though difficult, is confined to a narrow compass. While in one sense the construction of a railroad may be said to consist in the actual placing of the material of which it is composed, it was in another and far more comprehensive sense that this word was used by the legislature in the sections under consideration. In this sense the construction commences with the laying out of the line, and the bringing of men, animals, and materials together, in which one of the important and indispensable things to do is to prepare convenient shelter for the men and animals. When this is done successfully, and the design carried out, and the men and animals thus sheltered and housed, do the work, fill up the road-bed, and dig out the excavations, the material so furnished must be considered as furnished in the construction of the railroad.

I have carefully considered the case of *Basshorr v. B. & O. R. Co.*, 3 Atl. Rep., 285, cited by counsel for appellees, and do not think the law there decided at all applicable to the case at bar. All that was decided in that case was that a person sold certain machinery, used for the purpose of grinding material in the manufacture of artificial stone, to be used in the construction of certain railroad bridges, and certain appliances used for carrying the artificial stone to

the place where used by the contractor for the construction of the bridges, was not furnished in the construction of the bridges within the meaning of the mechanic's lien law of Maryland. I do not think there is much difference between the provisions of the law of Maryland and those of our own, so far as they are applicable to the question now under consideration; but the facts of the two cases are widely different. There the mill for grinding stone, to be used in manufacturing artificial stone, was erected at a point quite remote from at least one of the two bridges on which it was sought to extend the lien; because the two bridges were across different rivers, a good many miles apart, and the appliance, spoken of in the opinion, to be used to carry the stone when manufactured to the piers of the bridges, was most likely a steamboat to be used in carrying the manufactured stone from some common point on the Chesapeake bay, and up either one of the estuaries known, respectively, as the Big and Little Gunpowder. I agree with the writer of that opinion, that the machinery used as *the plant of a contractor*, remote as this one doubtless was from the work, could scarcely be said to be furnished in the construction of the work. But the shanties and temporary stables furnished by a railroad contractor for the shelter of his men and animals on the line, and at the scene of the work, are in no sense "a plant."

The case of *Winslow v. Urquhart*, 39 Wis., 260, is cited and relied on by counsel for appellant. That case is applicable, and illustrative of the principles which, as I think, govern the case at bar, and chiefly in showing the inadmissibility of the proposition that under our statute a lien only attaches for such material used in the construction of the railroad as becomes a visible and tangible part of the work. As I understand the facts of that case, one McCaulley had a contract to cut and drive sawlogs for Winslow & Co. For the purpose of filling the contract he had in his employment a large party of men, and employed one Brooks to

cook for them, which he did. His wages not being paid, he sued McCaulley therefor, and attached the logs, claiming a lien thereon for his wages, as cook for the men who cut and drove them. The statute, under which this claim was made—I quote from the opinion in the case (Tay. Stats. 1768, § 25)—"gives to any person who shall furnish any supplies, or who may do or perform any labor or services in cutting, falling, hauling, driving, running, rafting, booming, or towing any logs, or timber, * * * a lien on such logs or timber for the amount due for such supplies, labor, or services." Judgment was rendered for Brooks for the amount due him, and establishing his lien on the logs. An order of sale was issued, and the logs sold thereon, and, as I suppose, bought at the sale by Urquhart. Thereupon Winslow & Co., the general owners, brought replevin for the logs in the circuit court, where they obtained judgment. Upon appeal to the supreme court the judgment was reversed and the lien sustained. The following remarks of Judge Lyon, in delivering the opinion, seem to me to be eminently just and sound as applicable to the facts of that case, and are here reproduced as illustrative of the principles governing the case at bar: "It seems to us that the person who cooks the food for the men who fall the trees, and work directly and immediately upon the logs or timber, performs service in cutting, falling, driving, etc., such logs or timber, within the meaning of the statute, equally with those who use the axe, the saw, or the team, to the same end. These are all engaged in the business of manufacturing trees into logs and timber, and transporting the same from the forest to a market; and to accomplish the common purpose the labor of each in his department is necessary. Moreover, he who cooks the food 'furnishes supplies' equally with the person who furnishes the raw materials. The acts of both are essential to the supplying of the men with food and both 'furnish supplies' within the meaning of the statute. Both, also, render 'services on logs or timber' within the

4

meaning of the averment to that effect required in the affi-davit to be annexed to the attachment. * * * The statute under consideration was enacted in the interest of labor, and a sound public policy requires that it be liber-ally construed. The construction contended for on behalf of the plaintiffs is too narrow, and, if adopted, would go far to defeat the objects and purposes of the statute. We cannot adopt it, but must hold that the claim of Brooks, in the attachment suit, was within the statute" (p. 268).

The second contention of counsel for appellees is that " the appellant is not a party belonging to the class men-tioned and specified in the statute, and is, therefore, not entitled to a lien on appellee's railway line." Under this head they insist that a material man under the section (2), in order to have a lien on the railway line constructed, must be a contractor; that there must have existed, between the material man and the railroad company, some contract, ob-ligation, or understanding that the material, when fur-nished, would become a lien upon the line of road or would be a part of the road-bed or equipment; also, that the statute was designed for the benefit of the builders or con-tractors, and the liens given to subcontractors and contrac-tors furnishing materials for the purpose of giving them credit, etc.

I have carefully examined the cases, cited to the above propositions, cases arising under the earlier mechanic's lien laws of the states of New York, Tennessee, and Rhode Island. While they contain doubtless fair constructions of those statutes, they afford us but little aid in the construc-tion of our own, and certainly no authority for eliminating the words " laborer and material man " therefrom. With all the light furnished by these cases, I see no reason to doubt that a true construction of our statute gives to every one who labors or furnishes material in the construction of a railroad a lien therefor; nor that the order of material

by a contractor, subcontractor, or builder, and its delivery by the person from whom ordered, is all the contract necessary to constitute such person a material man, within the meaning of section 2 of our act, and entitles him to a lien therefor. The contention that a material man must also be a contractor, or subcontractor, to be entitled to the lien, is probably based upon the absence of a comma after the word material man and before the word contractor, as used in the section. While correct punctuation is of great utility and value, it is not always to be found in our statutes, and its absence will not be regarded as sufficient warrant for giving words a strained meaning.

The third proposition argued by counsel for appellee in the brief is, that "the material sold and used, in order to become a lien upon the property, must become a part of the property improved, and actually enter into and become a part of, and enhance the value of, the appellee's line of road so constructed." I have said about all that I desire upon this point while discussing the first proposition, but will add that the same words of the statute which give a lien for labor performed also give a lien for material furnished, and the same logic that applies to one must also apply to both. Applying the rule to labor, while it would give the laborer who piles up dirt and stone upon the line, or lays wooden bridges across the streams thereon, a lien therefor, it would deny it to his fellow who digs and removes earth and stone from the cut and tunnel through the mountain. I find no warrant for such a discrimination in the language of the act, and am confident that the spirit which actuated the legislature in its passage was of broad and general, and not of a narrow and partial, character.

The judgment of the district court is reversed, and a decree will be entered in this court for the plaintiff, establishing and declaring its lien upon the appellee's railroad,

and for its foreclosure, in accordance with the prayer of plaintiff's petition and for costs in both courts.

JUDGMENT ACCORDINGLY.

REESE, CH. J., concurs.

MAXWELL, J., dissenting.

I am unable to concur in the views of the majority of the court, and will briefly state the reasons for my dissent.

This action was brought by the plaintiff against the defendant in the district court of Lancaster county to enforce an alleged lien against said defendant. The facts upon which the lien is claimed to exist are as follows: One Marcus Kavanaugh was a subcontractor in the construction of the Missouri Pacific Railroad in Lancaster county, and purchased from the plaintiff building material to the amount of $296.19, to be used by said Kavanaugh in the construction of shanties for the persons engaged by him upon said subcontract, and also for the construction of stables for the teams used by said persons in grading said road. The shanties were not erected on the right of way, and had no connection whatever with the railroad.

A claim for a lien against the railway was duly filed in the office of the county clerk, and the necessary steps taken to perfect said lien, if such is given by the statute. On the trial of the cause in the court below judgment was rendered in favor of the defendant.

Section 2, chap. 54, art. 2, of Compiled Statutes of 1887, provides that, "When material shall have been furnished, or labor performed in the construction, repair and equipment of any railroad, canal, bridge, viaduct, or other similar improvement, such labor [laborer] and material man, contractor or subcontractor, shall have a lien therefor, and the said lien therefor shall extend and attach to the erec-

tions, excavations, embankments, bridges, road-bed, and all land upon which the same may be situated, including the rolling stock thereto appertaining and belonging, all of which, including the right of way, shall constitute the excavation, erection, or improvement provided for and mentioned in this act."

It will be observed that the lien is given for material which " shall have been furnished or labor performed in the construction, repair and equipment of any railroad," etc.

Do these words include lumber for the shanties and stables of contractors or subcontractors which is purchased for themselves and remains their own property? I think not. In no sense is such material used in the construction, repair or equipment of the road. If so, then the railway company might be subject to a lien for food and clothing furnished the employees of the contractors and subcontractors, and it would be difficult to determine where its liability would cease. The evident intention of the legislature was to limit the lien to such material or labor as was used in the " construction, repair, and equipment" of the railway, and the law does not apply to cases of this kind. The judgment of the district court is clearly right, and should be affirmed.