## PIERCE v. TEXAS PACIFIC COAL & OIL CO. (No. 1098.)

(Court of Civil Appeals of Texas. El Paso. Oct 21, 1920. Rehearing Denied Nov. 24, 1920.)

**1. Mines and minerals ⬤⇒78(7)—Oil lease not abandoned.**

In an action to cancel an oil and gas lease on the ground of abandonment, direction of a verdict for the lessee *held* proper; the facts at the most showing nothing more than a lack of diligence in pursuing the work of development.

**2. Mines and minerals ⬤⇒77—Breaches of covenant do not warrant forfeiture of oil lease, based on fair consideration.**

Where oil and gas lease provided for forfeiture only on failure to pay the annual cash considerations on a fixed date, breaches of covenants will not forfeit the right of possession; there being a fair consideration for the lease.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Action by P. P. Pierce against the Texas Pacific Coal & Oil Company. From a judgment for defendant, plaintiff appeals. Affirmed.

J. A. Johnson, of Stephenville, and Slay, Simon & Smith, of Ft. Worth, for appellant.

W. J. Oxford and John Hancock, both of Thurber, Chandler & Pannill, of Stephenville, and Jno. W. Wray, of Ft. Worth, for appellee.

HARPER, C. J. This suit was instituted by P. P. Pierce against the Texas Pacific Coal & Oil Company to cancel the following oil, gas, etc., lease.

### "Oil and Gas Lease.

"This lease made and entered into this 3d day of December, A. D. 1914, between P. P. Pierce and wife, S. A. Pierce, of Strawn, R. F. D. No. ——, and state of Texas, first parties, and Texas & Pacific Coal Company, second party, witnesseth:

"The first parties in consideration of five hundred eighty-two and 50/100 dollars to them paid, the receipt of which is hereby acknowledged, and of the covenants hereinafter contained on the part of second party do by these

presents let and lease to second party for a period of ten years from the date hereof, the following described premises situated in the county of Stephens and Palo Pinto and state of Texas .(here follows description), being all the land now owned by the grantors near this location containing 2,330 acres more or less, hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill operate for and procure natural gas, petroleum, coal or other mineral substances, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe casing and other things necessary in said work, and to construct on said premises and remove therefrom at pleasure, pumping plants, tracks, tanks, pipe lines, and other things necessary in the operation of this lease, avoiding as far as practicable damage to fences and growing crops, but in case of damage to these second party agrees to pay such damage the same to be fixed by appraisers should the parties hereto ,fail to agree to the amount of same, beginning at the expiration of each twelve months from the date hereof second party agrees to pay first parties in advance, ground rent at the rate of 25 cents per acre per annum less the amount of any royalties paid by second party to first parties during the preceding year and should the royalties paid during the preceding year equal or exceed the ground rent for the ensuing year first parties agree to accept said royalties as full payment of ground rent for said year.

"Should second party discover on said premises natural gas, petroleum, coal or other mineral substances in paying quantities and the same can be marketed to advantage, second party shall pay first parties for each gas well from which gas is sold or marketed and while so sold or marketed, royalty therefor at the rate of $150.00 per annum quarterly in advance, or at the option of the first party, ten per cent. of the market price of the amount sold.

"Should second party or assigns discover coal in paying quantities thereof the royalty shall be 6 cents per ton for all coal sold or marketed, payable quarterly, by second parties heir or assigns.

"In the event of the sale or marketing of petroleum, or other mineral substances second party shall deliver as royalty to first parties in tanks at the mouth of the well or wells or at the mouth of pit or shaft without cost to first parties one ⅛ of such products, or pay the market price in case thereof, at option of second parties and the remainder of such products shall belong to the party of the second part.

"A deposit of the moneys herein provided for to the credit of first parties in the First Nat. Bank in the city of Strawn shall be taken and accepted by them as payment if gas is discovered in paying quantities on said premises first parties shall have gas free for domestic purposes for one house now on the premises.

"Second party shall have and use free of charge all the gas or petroleum desired for drilling and operating purposes on these premises the ·second party shall have the free use of any water on said premises for drilling and operating purposes except, that no water shall be taken from any well used by first parties without their consent.

"It is further agreed between the parties hereto that in case natural gas, petroleum, coal or other mineral substances are discovered on said premises that this lease shall continue in full force and effect so long as any of these are produced in paying quantities, and that second party at any time may surrender or enter of record a release of said premises or any part thereof, and from said time be released from all liabilities under the terms and provisions hereof on all that part of the premises so surrendered or released and that in the event of second party failing to pay first parties in advance on ten days notice in writing by first party to second party as above provided the ground rent due under the terms and provisions hereof that this lease shall be null and void and the first and second parties shall be released from all liabilities herein mentioned. The second party agreed to drill no well except by consent of first parties within 200 feet of any building now on said premises. It is agreed by the parties hereto that all the terms and conditions of this lease shall extend to and be binding on their heirs, executors and assigns.

"In witness whereof the parties of the first and second part have hereunto set their hands and seals the day and year first above written.

"P. P. Pierce. [Seal]

"S. A. Pierce. [Seal.]

The appellant attacked the lease upon the grounds (limited to the questions presented upon appeal):

First. That there was an obligation attached to the lease requiring appellee within a reasonable time to enter upon the land and to diligently explore and develop the same for oil and gas purposes, as well as to market any mineral substance found, to the end that appellant would receive the primary and true consideration for the lease, to wit, the royalties provided for; that appellee failed to perform these obligations, in that it failed to diligently explore the land for oil and gas; that, if it be true that it has discovered gas, it failed to operate the wells and market the gas.

Second. That appellee was familiar ,with the depth of the oil sands under the land, more than 3,000 feet deep, and with this knowledge it was its duty to drill deep enough to the Pennsylvania sand which it failed to do, but, on the contrary, drilled only about 1,800 feet, and yet it still claims the right to tie up and hold plaintiff's lands, thus depriving him of the right to drill himself or to lease to others who would drill to proper depth, for which reasons defendant has forfeited his lease.

Alleged notice of forfeiture and demand for possession.

Defendant answered by general demurrer and general denial.

[1] At the close of the testimony the court instructed a verdict for defendant. This action of the court is assigned as error. The proposition is that there is evidence raising

the issue of abandonment, and this was a question of fact for the jury.

It is admitted by appellant that the rentals due under the contract were paid up to December 3, 1918, as provided by contract, and accepted; and it is also admitted that the amount was paid into the bank as provided by contract before the 3d day of December, 1918. But appellant says he had exercised his right to terminate the lease by notifying appellee on February 26, 1918, that he claimed a forfeiture for failure to carry out its terms.

The evidence shows that in 1915 a well was drilled to a depth of 1,700 feet, where gas was found, but not in sufficient quantities to pay, so the well was tubed off, pipe drawn out, to be used in another well.

A second well drilled in 1916, in which there was developed 4,000,000 or 5,000,000 feet of gas, and the well tubed and capped to await a market. And in 1918, a third well was drilled, since the suit was filed, which developed about 6,000,000 feet.

Mr. Gordon, general manager of appellee company, testified as follows:

"I have always intended giving Pierce some deep drilling there. He knew that he and I discussed it many times up until about a week before he filed this suit.

"He came to me several times about building a tank for water to do this drilling on his land; and after making his third trip to see me about this—I was very busy, I think he lost patience, with me and resented it, and within a week we were notified of the suit that he filed.

"This tank would have been to his benefit as it would have been on his land. I intended to build it. It was an earth tank for impounding water. We were doing that on other people's land, and he asked me to give him one on his land, and I told him we would do it, and intended to use it for prospecting his ranch.

"We drilled him (Pierce) a fresh-water well to replenish a tank we had used on his ranch. We drilled this deep-water well to a depth of something like 200 feet. It gave a water production of about 200 or 300 barrels a day. We left it in good shape, and his earthen tank is full of water, and the well is there in good shape and fixed for his use. I have talked to Mr. Pierce about that well. I think we are still good friends, and he knew what we were doing and he approved of it, and he never raised any objection to our doing it.

"Since he first sued, we have drilled one good gas well on his land, and I suppose it is good for 6,000,000 feet of gas. It is harnessed up and in good shape to be used when we can get it on the market.

"We have never intended to abandon this lease.

"I did direct you (Mr. Oxford) to make arrangements with Mr. Pierce for a deep hole out there just before this suit was filed, and, as I said before, one week before this suit was filed, Mr. Pierce was in my office and wanted me to go out and locate the acre to go ahead with the deep drilling, and I told him I was too busy, and in a week he filed the suit.

"I have never at any time had any intention to, abandon this lease. Not at all. We have spent $30,000 to test out the shallow pool and want to go deeper.

"Mr. Pierce gave me 10 years; I thought I could wait 10 years. If there was no offset wells to Mr. Pierce's land, I think I would have the right to wait 10 years to drill.

"We have spent $30,000 drilling this land already, and we are going to spend more money if you will let us. We can't do everything in a day. Therefore we asked for this long-time lease.

"I was under the impression that a 10-year lease gave me the right to delay matters if I saw fit."

The evidence further shows that at intervals of more or less duration the appellee was doing nothing in the way of development work upon any of the lands of appellant. But appellant admits the payment of the annual rentals; that the wells were drilled, gas found, and tubed off because there was no market close to the producing well.

Without quoting further from the evidence, it seems from admissions of the appellant in the case that a judgment forfeiting this lease for abandonment cannot be sustained upon any theory. At most, the facts relied upon show no more than a lack of diligence in pursuing the work of development, and this is not made a ground of forfeiture.

[2] The lease only provides for forfeiture upon failure to pay the annual cash considerations upon a fixed date, and in such cases, where there is a fair consideration for the grant, breaches of covenants do not forfeit the right of possession. Grubbs v. McAfee, 212 S. W. 464; Witherspoon v. Staley, 156 S. W. 557.

Finding no error, the cause is affirmed.