NELSON v. DOWNTAIN et al. (No. 10065.)*

(Court of Civil Appeals of Texas. Fort Worth. Dec. 2, 1922. Rehearing Denied Feb. 3, 1923.)

**1. Landlord and tenant ☞103(1)—Failure of lessee to construct rock-crushing "plant" held ground for forfeiture of lease.**

In an action by lessors to cancel a lease, which provided for a forfeiture if lessee failed to begin the construction of the necessary "plant" with which to begin operations within 60 days, where it appeared that lessee had marketed sand and gravel, but had failed to construct rock crusher, *held*, that the word "plant" had reference to the rock-crushing plant, and not to the picks, shovels, and wagons necessary to mine gravel and sand; "plant" meaning the fixtures, machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process, and therefore failure to construct such plant justified a cancellation of the lease (quoting Words and Phrases, First Series, Plant).

**2. Contracts ☞176(9) — Question of ambiguity of forfeiture clause in lease held for court.**

Where, in a suit to cancel a lease for failure to construct a rock-crushing plant within the time specified therein, it was contended that certain interlineations had been made which made the forfeiture clause ambiguous, the question of ambiguity was one for the court, and not for the jury.

**3. Evidence ☞460(4)—Parol evidence admissible to clear ambiguity arising from application of terms to subject-matter.**

If ambiguity arises in a lease by reason of the application of terms used in the instrument to the subject-matter, parol evidence may be heard to ascertain the true meaning and intent of the parties by the use of the terms.

Buck, J., dissenting.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Trespass to try title by L. C. Downtain and others against A. L. Nelson. Judgment for plaintiffs, and defendant appeals. Affirmed.

Shepherd & Kelly and Gilvie Hubbard, all of Eastland, for appellant.

Scott, Brelsford, Funderburk & Ferrel and R. B. Truly, all of Eastland, for appellees.

CONNER, C. J. This suit was instituted by appellees against the appellant upon the 12th day of August, 1920. The case was tried upon the third amended petition of the plaintiffs, which contained two counts, the first of which was in the form of trespass to try title to a tract of land therein described; the second count set up grounds for the cancellation and rescission of a certain lease contract relating to the land in controversy, a copy of which was attached to the plaintiffs' petition.

The defendant answered by a general demurrer, special exceptions, special pleas in bar of plaintiffs' right of recovery, plea of not guilty, general and special denials, pleaded the contract under which he held the property, and averred full compliance with its terms. Defendant further pleaded, in substance, that he had gone to great expense in fulfillment of the contract, paid all rentals due, all with the knowledge and acquiescence of plaintiffs, and that therefore they were estopped or had waived the forfeiture sought; and by way of cross-action for damages for the wrongful suing out of a writ of sequestration under which the property was seized and defendant ejected therefrom.

The case was tried before a jury, and upon their findings upon special issues judgment was rendered forfeiting the lease contract, and against defendant on his cross-action for damages, and from such judgment the defendant has duly appealed.

The original lease contract has been made part of the record and submitted to us for consideration. It is typewritten with certain interlineations with a pen. Omitting formal parts, it reads as follows, the underscored portions indicating the pen interlineations:

"Lessors for and in consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained, on the part of lessee to be paid, kept and performed, have granted, demised, leased and let and do by these presents grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating *for and marketing of* such quantities of limestone rock, *sand and gravel as may be found* in and upon all that certain tract of land. * * *

"It is agreed that this lease shall remain in force as long hereafter as lessee or his assigns shall produce from said lands crushed and screened limestone rock, *sand and gravel and*

quicklime or *either of them* without cessation of operation for more than ninety days at any time after beginning operation, and said operation or substantial preparation therefor shall be begun upon said land by lessee not later than sixty days from this date.

"In consideration of the premises, the said lessee covenants and agrees to deliver or pay to lessors 10 (10¢) cents for each cubic yard of limestone mined or quarried from said premises and by lessee disposed of on the market, as also for each cubic yard of such rock mined and burned into quicklime on said premises *and 50 cents per cubic yard for all sand and gravel removed and marketed* therefrom and the books of lessee and his assigns shall be accessible to lessors for the purpose of computing the output of such marketed *crushed rock, sand, gravel and* burned limestone at all times, as also to have access to the quarries *and pits* at all times for the purposes of comparison by way of quantities of rock removed therefrom for such commercial purposes said amounts per cubic yard to be so computed and paid by lessee or his assigns to lessors, or their assigns, at the end of each thirty (30) days run from the beginning of operations by lessee hereunder, it being agreed that such payment shall be made between the 1st and 10th days of each calendar months. *It is further agreed that in the event the market for above products shall advance above its present rates without proportionate advance of labor and other cost of production, then and in that event lessee shall pay lessors added royalty in due proportion to added profits.* * * *

"It is agreed and understood that in the event lessees shall fail to begin the construction of a necessary plant with which to begin operation as aforesaid, within a period of sixty days from this date, this lease shall become null and void, and that in the event lessee, or his assigns, shall suspend operations for a period of more than ninety days this lease shall terminate at the will of lessors and all rights of lessee hereunder be forfeited save and except as to lessee's right to remove from the aforesaid land all machinery, equipment, buildings, pipe lines," etc.

In their count seeking a forfeiture of the lease, the plaintiffs attacked it on the ground that, in substance, the principal inducements to the execution of the lease contract on their part were the fraudulent representations on defendant's part that he was able to and would, within the time specified in the contract, furnish, install, and operate a rock-crushing plant and the necessary machinery therefor; that such representations and promises were relied upon, but were false, and known to be false by the defendant at the time they were made. It was further alleged that if the contract was not void by reason of the fraud referred to that then the forfeiture clause referred to the construction of a rock crusher and not to the mining and marketing of the sand and gravel, and that the interlineations, which referred to the mining and marketing of the sand and gravel, rendered the forfeiture clause ambiguous, which they sought to explain, and

further that the real intention and agreement of the parties was that the forfeiture clause should apply to the erection of a rock crusher, and that in so far, if at all, as that provision in the contract failed to show such agreement, it was the result of a mutual mistake of the parties in reducing the contract to writing, or, if not a mutual mistake, then it was a mistake on the part of plaintiffs, induced by fraud on the part of the defendant, etc.

The jury, in answer to the special issues, returned a verdict to the effect that the interlineations made in the contract did not render the forfeiture provision ambiguous or doubtful or uncertain of meaning; and, further, that the agreement of the plaintiffs and the defendant was that a failure on the part of the lessees to begin the erection of the rock-crushing plant within 60 days from the date of the lease should render the lease null and void, but that the failure of the lease to so provide was not due to any mistake or fraud. The jury further found that the plaintiffs had not waived the forfeiture clause; that the main consideration on the part of the plaintiffs for executing the lease contract was "mining and crushing rock," and that such consideration had failed. The jury further found against defendant on the issues presented in his cross-action.

The questions presented here are, in the main, we think, pertinent to the issues of fraud, mistake, ambiguity, and waiver, but we deem it unnecessary to consider at length the numerous exceptions to the plaintiffs' pleadings, the objection to the evidence and to the verdict of the jury, and the judgment relating to these issues, for, as we consider the case, it is a simple one. The evidence on the part of the plaintiffs is undoubtedly to the effect that the lease contract, as originally made and typewritten, contemplated the establishment of a rock-crushing plant, and that the interlineations relating to the sand and gravel was an afterthought, and inserted before the execution of the contract in answer to the defendant's insistence that he be permitted to mine the sand and gravel pending the establishment of the rock-crushing plant, and we are of the opinion that such evidence is not in violation of the rule so insistently urged, which forbids the alteration or violation of a written agreement. The word "plant" is of variable meaning; it may mean to set in the ground for growth, as a tree or seed for an expected crop, and a number of other things as given by Mr. Webster in his definition of that word. In Words and Phrases, vol. 6, p. 5400, we find the following:

"'Plant' means the fixtures, machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process"—citing Florida decisions.

Again:

"The shanties and temporary stables furnished by a railroad contractor for the shelter of his men and animals on the line, and at the scene of the work, is in no sense a 'plant' within the principal that the machinery used as the 'plant' of the contractor, removed from the work, can be said to be furnished in the construction of the road, and a lien granted thereon"—citing Lumber Co. v. M. P. Ry. Co., 28 Neb. 39, 44 N. W. 47.

What then did the parties to the contract under consideration mean by the term "plant"? It certainly cannot be understood, and was not understood, in the same sense or meaning that it would have in a contract for the construction of an iron foundry or an electric power plant. To properly understand the term, we must know the subject-matter to which it relates, and it is a familiar rule of evidence that courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances.

In the Blue Book on Evidence, vol. 3, § 453, it is said:

"They [the courts] are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. Hence it is frequently necessary, in order to construe written instruments, to receive evidence of other accompanying facts than those which serve to apply the instrument to the subject-matter or the persons intended. There is a class of cases which has carried the rule somewhat further than is indicated in the last three sections. These cases hold that under some circumstances, not only the situation and relation of the parties, but their acts, negotiations, and statements may be proved as part of the surrounding facts which throw light on the transaction. It would be impossible to prescribe by general rule the precise limits within which, under the ever varying facts, such testimony may be admitted."

The author in the same section cites a number of cases illustrating the text. Among other illustrations was one from a South Dakota case wherein the contract under consideration provided for the construction of a "flowing well," but failed to, in any manner, specify the amount of water to be discharged from said well. For the purpose of understanding what the term "flowing well" was intended to mean in the contract, it was held to be clearly proper for the defendant to allege and prove the representations of the plaintiff, and the circumstances under which the contract was made, and the matter to which it related for the purpose of explaining what was meant by the term "flowing well." In one of our own cases, Kelly & Roberts v. Robb, 58 Tex. 377, it was alleged by the plaintiff in the suit that he had theretofore sold to the defendant all the "saw timber" on the land described in his petition, and that by "saw timber," at the place where the contract was made and among persons engaged in the lumber business, was meant such "pine timber" as was suitable for manufacture into lumber, and the words were so used and understood between the plaintiff and Kelly at the time the contract was made. It was held that the petition so alleging was not subject to demurrer, the court stating that:

"Neither the court below nor this court could know judicially what was meant by the words 'saw timber,' and it is certainly true that the court could hear evidence, the pleadings having laid the proper foundation therefor, to enable the court to know in what sense the parties used the words in making the written contract which was alleged to have been made. It has often been held that an inquiry can be made into the meaning of words and by persons in a particular business, such words having no fixed legal signification. In this case, if the evidence showed that the words 'saw timber' in the community in which the contract was made, among persons engaged in the manufacture of lumber, meant only such pine timber as was suitable for the manufacture of lumber, the court would have been authorized to find, as it did, that they so meant, and that they did not embrace any other kind of timber. The admission of such evidence would violate no rule of evidence. In the absence of a statement of facts, we must presume that the evidence was sufficient to show that the words had only the meaning claimed for them by the plaintiff."

The case of Roberts v. Short, 1 Tex. 373, was an action of debt brought by Short to recover of the defendant Roberts the amount of a joint and several note for $125. After the note was read to the jury and the plaintiff had announced his evidence closed, the defendant proposed to prove that the amount called for in the note was Texas treasury notes, or their value at the time the note fell due, and not for par money or its equivalent in Texas treasury notes to the amount called for in the note, which evidence the court refused to admit. It was held that the evidence so tendered by the defendant should have been received. The court in disposing of the question cited a number of authorities, and, among others, quoted with approval the case of Colpoys v. Colpoys, Jacob, 451, an English case, wherein it was said:

"The books are full of instances sanctioned by the highest authority, both in law and equity, when the person or the thing is designated on the face of the instrument by terms imperfectly understood and equivocal, admitting of either no meaning at all by themselves or of a variety of meanings, of referring tacitly or expressly, for the ascertainment and completion of the meaning, to extrinsic circumstances."

See, also, rule 22, bottom page 849, of Sayles' Texas Civil Statutes of 1897, citing numerous Texas cases to the effect that in written agreements where the meaning of the words are doubtful, the instrument may be read in the light of surrounding circumstances relating to the subject-matter of the contract, and parol evidence is admissible to show the meaning of the language used. See, also, Blue Book on Evidence, vol. 3, §§ 454, 455.

[1] The allegations therefore of the plaintiffs' petition in this case, to the effect that by the use of the word "plant" in the lease contract under consideration was meant a rock-crushing plant, were not demurrable, nor did the evidence offered and received by the court, to the effect that the term was so understood by all the parties at the time of the writing of the instrument, infringe on the rule against the admission of parol testimony which adds to, varies, or contradicts the terms of the writing. The evidence tends to show that at the time and in the county of the parties and where the contract was made a large amount of road construction with crushed rock foundation was going on, and that the land in controversy was chiefly valuable for grazing purposes and for its limerock and sand, and that as originally agreed upon the contract related alone to the limerock which, in order to be reduced to its most merchantable form, must be crushed. There was evidence to the effect that after the contract had been reduced to its typewritten form the interlineations relating to the sand and gravel were made at the instance of the appellant, who insisted that he desired to be profitably occupied pending the erection of the rock-crushing plant, and that this was readily agreed to by the lessors. It certainly cannot be reasonably contended that the picks, shovels, and wagons necessary to mine the gravel and sand would constitute a "plant," within the meaning of the contract when considered together with the subject-matter to which the contract related, and in the light of the circumstances and of what the parties said and did at the time.

Stress has been given to the finding of the jury that there was no ambiguity in the instrument we have been considering. We have not, however, been inclined to attach importance to this finding, and therefore care to only notice it briefly. The issue of ambiguity, as submitted, was but one of several alternative issues presented by the plaintiffs' petition. The vital issue was, What did the parties to the lease have in mind and mean by the use of the word "plant," as used in the lease and in the forfeiture clause? The plaintiff distinctly alleged that it meant a rock-crushing plant. And in the alternative, to the effect that if the lease, properly construed, did not so mean

that then the word had been rendered ambiguous; but, if not, that omission in the lease to specifically specify that a rock-crushing plant was to be furnished and installed within the 60-day period specified in the forfeiture clause, that the omission was through mutual mistake, or mistake of the plaintiffs, induced by the fraud of the defendant. The issues of fraud were eliminated by the verdict of the jury, for they found there was no fraud nor was there any mistake, so that the remaining and only remaining material issue was whether the word "plant" as used in the lease and forfeiture clause meant a rock-crushing plant as the plaintiffs alleged, and, in the determination of this issue as we have pointed out, we think it was permissible for the court and the jury to be placed in the position of the parties and consider the circumstances existing at the time. When the lease is so considered, we think it very plain under the evidence that by the term "plant," as used in the lease and clause of forfeiture, was meant a rock-crushing plant, and the interlineations in the lease do not render this interpretation ambiguous or uncertain, and this must have been the conclusion of the jury; otherwise they would not have found, as they did, in plaintiffs' favor for a forfeiture of the lease. If plain, as evidently considered by the jury, they could well say that there was no ambiguity in the lease, and that is probably what they meant by their finding on that issue.

[2, 3] Moreover, the question of ambiguity is one for the court and not the jury. It is well settled under the authorities, if the ambiguity arises by reason of the application of terms used in the instrument to the subject-matter, that parol evidence may be heard to ascertain the true meaning and intent of the parties by the use of the terms, and the question of ambiguity is addressed to the mind of the court for determination when he is called upon to hear evidence of the situation, the subject-matter, and the circumstances under which the instrument was executed. Hence it was, as stated, that we in our disposition of the case have not deemed it important to especially discuss the findings of the jury. They did find to the effect that the agreement of the plaintiffs and defendant was that a failure of the lessees to begin the erection of the rock-crushing plant within 60 days from the date of the lease should render the lease null and void and that the interlineations made in the contract did not render the forfeiture provision ambiguous, uncertain, or doubtful of meaning. And that this veiw is sustained by the evidence we think can scarcely be doubted, notwithstanding the conflicting evidence offered by the defendant. At no time was there a discussion of any other means or manner for

the development of the land save by a rock-crushing plant and such roads and other things as would be appropriate therefor.

We therefore conclude that the judgment of the trial court forfeiting the contract must be sustained, it being our further opinion that the verdict of the jury that the forfeiture clause of the contract had not been waived by the appellee is sustained by the evidence. All assignments of error and propositions thereunder are overruled and the judgment is affirmed.

BUCK, J. (dissenting). It is with regret that the writer must dissent from the conclusions reached by the majority in this cause. I do not believe that the findings of the jury authorize or justify a judgment for plaintiffs in this suit. Plaintiffs pleaded in the alternative that the interlineations made in the contract rendered the forfeiture clause ambiguous. That is, that in the use of the word "plant" it was intended that it should apply only to a rock-crushing plant, and not to a plant necessary for and to be used in the extraction of sand and gravel. The question whether the clause was ambiguous or not was submitted to the jury, and they found that it was not ambiguous. It may be truly said that the question of whether the terms of a contract are ambiguous is for the court and not for the jury. But where the court submits the issue to the jury, and they find that the contract is not ambiguous, and the court renders judgment in part on such findings, it seems to the writer that it must be held that he adopts the findings of the jury upon that issue, and that the judgment rendered upon that finding, in part, imports a finding by the court that the contract was not ambiguous.. To the second and third issues, the jury made no answer, but to the fourth issue, to wit:

"Did the plaintiffs and defendant agree that a failure on the part of the lessee to begin the construction of the rock-crushing plant within 60 days from the date of the lease would render the lease null and void, and was the failure of the lease so to provide due to mistake on the part of plaintiffs induced by fraud on the part of defendant?"

the jury answered to the first question, "Void," and to the second, "No." Therefore the jury found that no actionable fraud was committed by the defendant in the procuring of the contract. In reply to the question of what consideration was paid by defendant to plaintiffs for the execution and delivery of said lease, other than the royalties afterwards paid, the jury answered, "$1.00." The sixth issue was to be answered, if the jury had answered any one of questions, 1, 2, 3, 4, or 5, in the affirmative. They did not answer, as before stated, questions 2 and 3 at all. Question 4 they answered, in part at least, in the negative. The jury answered in the negative to the question:

"Did the defendant, within 60 days from the 29th day of October, A. D. 1919, begin construction of a necessary rock-crushing plant? In connection with this question you are instructed that the word 'plant' means, as used in reference to undertaking such as that provided in the lease contract, the fixtures, machinery, apparatus, etc., necessary to carry on the proposed work."

If the use of the word "plant" in the forfeiture clause of the contract did not render the clause ambiguous, then it appears to the writer that if the fixtures, machinery, apparatus, etc., necessary to carry on the work of extracting the sand and gravel was of a character that they could reasonably be called a plant, then the defendant had complied with that part of his contract, and no right of forfeiture was shown. The word "plant," in a statute declaring that a master is liable for any injury to his servant caused by any defect in the ways, works, machinery, or plant, comprises whatever apparatus, fixtures, or tools a master uses in his business. 3 Words and Phrases, First and Second Series, p. 1049; Sloss-Sheffield Steel & Iron Co. v. Mobley, 139 Ala. 425, 36 South. 181, 184.

In Todd v. Gernert, 223 Pa. 103, 72 Atl. 249, the word "plant," as used in the mechanic's Lien Act, was held to mean property owned or used in carrying on some trade or business. Webster's International Dictionary defines the word "plant" as the whole machinery and apparatus employed in carrying on a trade or mechanical business.

The defendant testified: That he and a Mr. Waldrip, both of them civil engineers. first made a survey of the land under lease. That then he began the cutting away of the timber from the ledge of the limestone rock. That he constructed a pit for the Eastland Sand & Gravel Company, the name under which defendant was doing business, about 70x200 feet. That then he constructed a driveway and ditch leading from this pit about 8 feet wide and 200 feet long. Then he built some corrals for his horses and three houses on the land. That he then built a tank across a gully, which was perhaps 170 feet long and 5 to 7 feet wide at the top and 10 to 12 feet wide at the bottom. This was necessary in order to keep the surface water from coming down over the ledge in question and to provide water for defendant's stock. Other work was done, such as cutting timber for the foundation of the rock-crushing plant, and defendant testified that the total cost of this work of preparation was between $5,000 and $6,000. That he was to use some of the posts cut off the land to build a crusher bin 24 feet long and 16 feet wide. He testified that soon after the

contract was made he began to write letters and make inquiries as to where he could buy rock-crushing machinery, and that finally he secured the promise of some from a party near El Paso. That there was a great deal of road building in the state at that time, and it was difficult to buy such machinery as he needed. That he had ordered the machinery to be shipped, when Dr. Downtain refused to accept payment for certain gravel taken off the place, and that thereupon he notified the parties not to ship the machinery. That he did market some limestone rock off this land before the writ of sequestration was served on him whereby the plaintiff secured possession of the premises. That at that time, on account of the extensive road building in Eastland county, there was a great demand, not only for crushed rock, but also for sand and gravel.

Plaintiffs relied, in their effort to have a rescission or cancellation of the contract declared, on their allegation that fraud had been practiced by defendant in securing the plaintiffs' signature to the written contract after the interlineations had been made, or on a mistake by plaintiffs, induced by such fraud. It is not alleged by what means or conditions the fraud was practiced. It is elementary that fraud cannot be shown unless specifically pleaded, and that general allegations of fraud without specific allegation of misstatement or acts constituting the fraud is not good, even as against a general demurrer. Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 74, writ denied; Black on Rescission, p. 98. A contract must state the conditions upon which a forfeiture is sought, and a forfeiture will not be declared upon a condition not clearly expressed in the contract, Pierce v. T. P. C. & Oil Co. (Tex. Civ. App.) 225 S. W. 193. If, as said in plaintiffs' allegation, the contract was ambiguous, then it seems that where a forfeiture clause is ambiguous, the ambiguity condemns it as a forfeiture provision. As said by Chief Justice Phillips in Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385:

"If the provision is ambiguous, that alone condemns it as a forfeiture provision. A forfeiture should rest upon surer ground. Where a contract is so vague in its terms that a court cannot determine its meaning, it would be unjust to enforce a forfeiture under it against one whose only fault has been to possibly mistake its meaning. Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful."

It is true that the jury found that the use of the word "plant" did not make the for-feiture clause ambiguous. But if it is not ambiguous, then, for the reasons above stated, the writer does not think that the trial court was justified in entering a judgment declaring a forfeiture.

Owing to the press of other official duties, the writer has not found time to go into the record carefully, and to write more fully upon the questions raised in the assignments of appellant. But in the writer's opinion, the judgment of the lower court should be reversed, and the cause remanded. He believes that upon the answers of the jury the trial court should have, at most, declared that such answers were, in effect, contradictory of each other, and set aside such verdict and held the case for another trial.

Since writing the above, Chief Justice CONNER has changed the first draft of his opinion, but I will let the dissent stand as written.